## BLADES *v.* RAND, McNALLY & Co.[1]

### (*Circuit Court, N. D. Illinois.* March 22, 1886.)

1. PATENTS FOR INVENTIONS—TICKET CASES.
   Letters patent No. 86,277, of January 26, 1869, to Frank Brewster, and No. 145,388, of December 9, 1873, to Leonard J. Blades, construed, and *held* limited to the special devices which they describe and claim, and not infringed.

2. SAME—PATENTS CANNOT SUPPLEMENT EACH OTHER.
   These two patents cannot support or supplement each other. They are each for combinations, and the question is whether the defendants use the combination shown in each, and not whether parts in each combination can be found in each patent.

3. SAME—ACQUIESCENCE IN REJECTION OF APPLICATION—EFFECT OF.
   Where a patentee, having made broad claims in his application, which were rejected, accepted claims for a combination of the parts shown, he must be limited to his specific device.

4. SAME—ASSIGNEE BOUND BY APPLICANT'S ACTIONS.
   The action of an applicant for a patent in accepting restricted claims is part of the law of the patent, and controls the assignee as well as the original patentee.

5. SAME—REFERENCE TO REJECTED APPLICATION.
   Although the broad claims of this application were rejected on a reference to a rejected application, in accordance with the then practice of the patent office, which practice was soon afterwards overruled by the supreme court, *held,* that the applicant having acquiesced and taken a limited claim must now be confined to the claim he accepted.

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

In Equity.

*Offield & Towle,* for complainant.

*Gridley & Fletcher,* for defendants.

BLODGETT, J. This suit is brought to restrain the alleged infringement of patent No. 86,277, granted January 26, 1869, to Frank Brewster, for "an improvement in railroad ticket cases," and patent No. 145,388, granted December 9, 1873, to Leonard J. Blades, for "an improvement in ticket cases," and for an accounting.

The Brewster patent is for a case containing any desired number of ticket drawers, or pigeon-holes, for holding the tickets for the requisite number of stations; these drawers being so constructed that each is complete in itself, and easily taken from or replaced in the case. The rear ends of these drawers are raised so as to incline the drawer towards the front of the case, and the tickets are placed in the drawer, either upon the end or edge, so as to present the face of the ticket to the front of the case. In the front end of the side pieces of these drawers are narrow strips of metal, or other suitable material, against which the ends or edges of the tickets rest, so as to keep them in place, and at the same time allow the face of the front ticket to be plainly seen from the front of the case. The upper ends of these strips are also bent over on the upper edge of the drawer, and a small slot cut in the angle only wide enough to allow the withdrawal of a single ticket at one time; and this withdrawal must be by pushing the ticket upwards instead of downwards. Behind the tickets is a follower, arranged with a rod and spring, so as to keep the tickets in the drawer pressed firmly against the front strips. The object in setting these drawers at an incline is stated to be to give room for the drawing of the tickets over the tops of the drawers. The patentee disclaims the older devices "for the prevention of the withdrawal of more than one ticket at once, where the tickets present an end-edge front, and are withdrawn from the bottom." The patent contains but one claim, which is: "The combination of the drawer, *c,* having upon its front edges the metallic strips, *f,* slotted as described; the rod, *i,* having attached thereto a follower for pressing forward the tickets, and the springs, *j, j,* all constructed and arranged and operating substantially as set forth."

As to the Blades patent, it is stated in the specifications that the invention is for an improvement in the class of railway ticket holders in which the slides or drawers are provided with spring-guided followers for pressing the tickets forward into position to be seized and drawn out. He says:

"I employ a follower actuated by gravity, thereby economizing space, and securing other advantages, and so construct and arrange the slides and their containing case that the tickets may be drawn downwards, and then out of the slide compartments, and the slides themselves also drawn forward and suspended in a vertical position for refilling with tickets, as will be hereafter more fully described."

The description of his device shows an outer case, constructed with upright sides, upon the inside of which uprights he cuts grooves inclining upward from the front towards the rear. He then forms the drawers or slides, the bottoms of which extend laterally, forming flanges which fit into these grooves. There may be any number of these drawers, and each drawer is divided by vertical partitions into as many compartments as may be wanted. The tickets are to be placed on edge or end in the drawers, so as to present a front face, and small stops of wood or metal are fixed to the partitions to prevent the tickets from sliding out of the front ends of the slides or drawers; but each compartment is left sufficiently open to show the face of the ticket, and a slot is left between those stops and the bottom of the drawer large enough for a single ticket to be withdrawn at a time, and the tickets are drawn downwards instead of upwards, as in the Brewster case. The pitch or inclination of the drawers is such as to incline the bundle of tickets by its own gravity down against the front ends of the drawer, and a metal follower is placed behind the tickets, which, by its weight, keeps the tickets upright, and presses them firmly against the front strip of the drawers. The drawers are kept in the groove by resting against a stud driven in the front part of the groove, and a lug or hook is placed at the rear end of the drawers; and, for the purpose of replacing the tickets, the forward ends of the drawers are lifted over the stud, and the drawers slid downwards until the lug at the rear end catches on the studs in the front end of the groove, when the drawer will be suspended nearly vertically, and in a convenient position for refilling them with tickets. The claims of this patent are—

"(1) A series of ticket-holding slides, *c*, arranged in inclined ways in a case, *a*, and having strips, *e*, applied vertically, or nearly so, to the front edge of the partitions, *d*, so as to leave a space, *g*, at the bottom, and the gravitating follower blocks, *f*, all combined as shown and described. (2) The combination of the ticket-holding slide, *c*, having lugs or projections, *k*, at the rear side, with the case *a*, having grooves, *a*, and studs, *i*, combined as shown and described, whereby the slides may be drawn forward and suspended vertically, to be filled as specified."

The defendants make and sell a case in which ticket-holding drawers are set into a case inclined so that the rear end is much higher than the front, and so arranged as to show the face of the tickets, and with a follower, actuated by its own gravity, behind the tickets, for the purpose of keeping the tickets upright, and pressing them to the front; the front having narrow vertical strips which prevent the tickets from falling, or passing out through the front end of the drawers, and with a slot formed by these front strips and the bottom for withdrawing a single ticket at one time by a downward motion.

The defenses are (1) that the patents are void for want of patentable novelty; (2) if not void for want of novelty, they are limited by the state of the art to the special devices shown, and, when so limited, defendants do not infringe.

Before discussing these questions raised by the defense, I will say that I do not see how these patents can support or supplement each other. They are each for combinations, and the question is whether the defendants use the combination shown in each, and not whether parts of each combination can be found in each patent. The proof also shows that the Brewster case, as described in his patent, has never gone into public use. The large space required for its separate drawers, the provisions for the withdrawal of the tickets by an upward instead of a downward movement, and the defects in the practical working of the follower and spring for pressing the tickets to the front, form, when all taken together, such objections to its use as have prevented its acceptance and adoption as a practical ticket case.

The evidence shows that in May, 1854, the executors of Thomas Edmondson obtained a patent for a railway ticket case in which the tickets were placed in nearly vertical tubes, the rear ends of which were raised so as to incline the tickets, as they lay flat in the tube, somewhat towards the front of the case; and while these pigeon-holes, or "tubes," as they are called in the patent, have an opening in the front, I do not think it can be fairly said that it was a part of the design of the structure to show the face of the ticket through this opening, and the tickets were withdrawn from the bottoms of the tubes by pulling them forward. The proof shows that this case went into extensive use in this country, and has so nearly filled the public want that, although the Blades case and the defendants' case are deemed substantial improvements, especially where business calls for a rapid sale of tickets, it still holds its place as a useful device.

Following the Edmondson patent, came, in February, 1856, the Apperly patent, and in May, 1856, the Conkling patent, and in January, 1862, the Duffield patent; all of which showed drawers or tubes for holding the tickets flatwise, and withdrawing them singly from the bottom. Each of these also showed a device by means of a weight or spring to press the tickets firmly against the bottom, so as to insure their ready withdrawal; and the Duffield patent shows the drawers inclined towards the front, but no device for showing the face of the ticket and withdrawing it from the front instead of the bottom is shown in the proofs until the Brewster patent.

The proof shows that in the application for his patent Brewster claimed "(1) a ticket case having movable apartments or drawers, c, with springs, j," etc. "(2) I claim a ticket case which presents the ticket front face, in combination with a spring or device for forcing said tickets forward, as shown," etc. "(3) I claim the inclined apartments, as shown. (4) I claim the slot, g, in the upper part of and at the angle of the strip, f, through which to draw the tickets upwards," etc.

The application with these claims was rejected, and Brewster then amended his application, and accepted the single claim which ap-

pears in the patent. This claim is for the construction of the drawer, *c*, having upon its front edges the metallic strips, *f*, slotted as described, the rod, *i*, having attached thereto a follower for pressing forward the tickets, and the springs, *j, j;* all constructed, arranged, and operating, etc. It seems to me that this patentee having, in the first instance, made broad claims, which were rejected, and then accepted a mere claim for a combination of parts shown, must be limited to the specific device. The proof shows that his first application was rejected on a reference to a rejected application shown in the files of the patent-office, which practice of the office was soon afterwards overruled by the supreme court; but this applicant acquiesced, and took a limited claim, and must now be confined to the claim he accepted. This combination includes the rod, *i*, having attached thereto a follower, and the springs, *j, j*, and this seems to me to limit him to a spring follower, and he cannot cover in this claim a follower operating by its own gravity, although he says "other styles of springs" may be used, and "the same results may be accomplished with a weight and roller," because he had claimed in his first application, broadly, "a spring *or device* for forcing said tickets forward, as and for the purpose specified," and then abandoned that broad claim, and taken one which confines him to the specific arrangement shown; and having also made broad claims for showing the front face of the tickets, and for the inclined apartments, and those claims having been denied, he has, by accepting the restricted claim, abandoned the extension of his claim by construction so as to cover what was in terms refused him, and his action in this matter is part of the law of the patent, and controls the assignee as well as the original patentee.

As was said by the supreme court, speaking by Mr. Justice BRADLEY, in *Keystone Bridge Co.* v. *Phœnix Iron Co.*, 95 U. S. 274:

"Here, again, the patentees clearly confine themselves to wide and thin bars. They claim the use in truss bridges of such bars when the ends are upset and widened in the manner described. It is plain, therefore, that the defendant company, which does not make said bars at all, but round or cylindrical bars, does not infringe this claim of the patent. When a claim is so explicit, the courts cannot enlarge or alter it. * * * When the terms of a claim in a patent are clear and distinct, (as they always should be,) the patentee in a suit brought upon the patent is bound by it. * * * As patents are procured *ex parte*, the public is not bound by them, but the patentees are; and the latter cannot show that their invention is broader than the terms of their claim; or, if broader, they must be held to have surrendered the surplus to the public."

If the defendants' inclined tubes and drawers are the equivalents of the drawer, *c*, of the Brewster patent, they are not used in combination with a follower rod and spring, such as Brewster limits himself to; nor are they used in connection with metallic strips, *f*, slotted as described in Brewster's patent. Without further discussion, then, I feel compelled to find that the defendants do not infringe the Brew-

ster patent. While defendants' case is organized like Brewster's, so as to show the front face of the ticket, and with a device for pressing the ticket forward, still the limitations of Brewster's patent require the use of the entire combination which he covers by his claims, and, as the defendants do not use the entire combination, I feel compelled, under the proofs, and the law applicable thereto, to find that defendants do not infringe the Brewster patent.

The proof shows that Blades, in the application for his patent, claimed "(1) a ticket holder, $c$, having an inclined bottom and front strip, $e$, combined with the forwardly inclined loose sliding block, $f$, as and for the purpose described; (2) one or more ticket holding and distributing drawers, sliding obliquely in the case, $a$, as and for the purpose set forth." The patent with these claims was rejected, the examiner reporting, "All the patentable features in this case are shown in the patent of Frank Brewster." The application was thereupon amended by erasing the second claim; and an argument was filed, insisting that the inclined block, pressing by its gravity upon the tickets so as to hold them together, is not the equivalent of the follower rod and spring used for the same purpose by Brewster; and that, as Brewster's patent was for his specific means, Blades was entitled to a patent for his means for pressing the ticket in front. Thereupon the examiner reported as follows: "A follower in a ticket case, connected by a spring, is considered an equivalent to a follower connected by gravity, and no patentable difference is perceived;" and thereupon Blades amended his application by erasing the first claims applied for and taking the two claims now shown in the patent.

The second claim of this Blades patent is for a combination of the ticket-holding slides, $c$, having lugs or projections, $k$, at the rear side, with the case, $a$, having the groove, $a$, and studs, $i$, combined as shown and described, whereby the slides may be drawn forward and suspended vertically, to be filled as specified. As the defendant's ticket case shows no lugs like the lugs, $k$, upon the Blades drawer at the rear, and no grooves in the sides of the case, and no studs, and no arrangement of parts whereby the slides may be drawn forward and suspended vertically, I am very clear that this claim is not infringed by the defendants' case. It will be noticed that in his first application Blades claimed a ticket holder having an inclined bottom and front strips combined with his gravity follower or pressure. His patent with this claim was rejected, and he finally took as the first claim of his patent "a series of ticket-holding slides, $c$, *arranged in inclined ways in the case, $a$, and having strips, $c$, applied vertically, or nearly so, to the front edge of the partition, and the gravity follower.*"

In view of what was done in the patent-office, I have no doubt but Blades must be limited to his ticket-holding slides, moving in the groove, $a$, upon the flanges, $c$, and held in place by the stud, $i$. In other words, the patent-office allowed him a patent upon just what

his claim described, and no more, and he accepted his patent upon those terms. It is clear from Blades' specifications that he considered the "lug, *k*, and the stud, *i*, each operating in connection with the groove, *a*, permitting the suspension of the drawers in a vertical position to be refilled with tickets," as an important feature of his device, for he not only covers it specifically by the second claim of his patent, but he says in his specifications that he so constructs and arranges the slides, and their containing case, that the slides themselves may be drawn forward and suspended in a vertical position for refilling with tickets, and by the terms of the first claim the slides must move in the groove, *a*. Taking, then, his action in connection with the patent-office, and the obvious double purpose of his grooves and flanges as indicated by the two claims which he took, there can be no doubt that he must be confined to a case with grooves in which the drawers provided with flanges slide, and with such an arrangement of parts as that the drawers may be suspended vertically upon the front of the case.

The defendants' device, as already described, consists of a series of tubes arranged and inclined side by side in tiers, with a gravity follower, and each tube or slide may be removed by itself. There is no groove, *a*, and there are no flanges to the drawers or tubes. There are no studs to hold the drawers in place, and no lugs at the rear of the drawers by which they can be vertically suspended. In fact, the defendants' tubes are suspended, rather than slid, into the defendants' case, being held in the rear by a hook, and their forward ends resting upon a cross-piece, so as to hold them at an acute angle in the case. The difference between the cases is not wide, but it must be remembered that this field had been quite fully passed over and occupied by other inventors before Blades entered it. In fact, there seems to me to have been very little room for the exercise of inventive talent after the production of the Edmondson case in the modification of an Edmondson case into a Blades case, although considerable time elapsed before the Blades case was brought out. The Edmondson tubes or drawers were fixed and stationary in the case. The bottoms of his tubes were inclined towards the front, and the tickets were to be withdrawn from the bottom through a slot. About all that Brewster or Blades did was to modify the Edmondson case by setting the tubes at a more acute angle, so that the face of the tickets could be read from the front of the case, and apply force, either by a spring or weight, to press the tickets to the front, and make a slight change in the slot, through which the tickets should be withdrawn by a downward movement. The Brewster case seems to have been an ordinary case, with pigeon-holes so arranged that each of the drawers which he describes can be passed into one of the pigeon-holes, and there held in an inclined position. The fronts of the drawers, from the fact that they were so held, formed a series of steps upon the front of the case; so that when Blades came in with

his device for a patent, the patent-office told him that all he had done had been anticipated by Brewster; that is, Brewster had shown an inclined slide, holding a front-face ticket in a slot, by which the ticket could be withdrawn, and a spring to press the ticket to the front; and he was also told that there was no patentable difference between using the weight and a spring for the purpose of pressing the ticket to the front. Apperly, Conkling, and Duffield had already shown weights or springs for the purpose of pressing the tickets to the front, from which they would be delivered, and this was the object, and the sole object, of the spring in Brewster's and the weight in Blades'. It therefore seems to me no hardship to hold Blades, and those operating under his patent, to the specific devices covered by it, which was all the patent-office evidently intended to allow him; and, confining him to his device, the defendants evidently do not infringe. The bill is therefore dismissed for want of equity.