# COMPUTING SCALE COMPANY OF AMERICA *v.* AUTOMATIC SCALE COMPANY.

PATENTS; INFRINGEMENT; EVIDENCE; ESTOPPEL.

1. Where a patentee, alleging infringement, is shown not to have been a pioneer in the art, but merely an improver, he is entitled to such recognition as his contribution to the art warrants, and his assignees to protection to the same extent, subject, however, to such limitations, if any, as either permitted to be imposed upon the grant, as disclosed by the file wrapper and contents of the application upon which the patent issued. But no such limitations, nor any abandonment of any part of the invention, is to be presumed, but must be shown by clear and convincing proof.

2. While the courts will ascertain what contribution an inventor has made to the art to which his invention relates, and will protect him to the full extent of that contribution, due weight must be given to any estoppel which he has created by reason of anything done by him, or suffered to be done, either prior or subsequent to the issuing of his patent, which prevents him from claiming his invention in its entirety.

3. To correctly determine the questions of patentability and infringement in an infringement case, the claims of the party alleging an infringement of his patent must be considered in the light of the prior art and of the proceedings in the Patent Office; and, if the claims are valid and can be taken at their face value, they are clearly infringed.

4. In an infringement case, involving the claims of a patent for improvements in computing scales, in which nonpatentability and noninfringement are claimed, where it appears that the main difference between the complainant's device and a former patent is that his cylinders are arranged vertically, while those of the former patent were arranged horizontally, and that such vertical arrangement was old long before any date that can be assigned to the complainant, it must be held that, (1) there was no invention in complainant's device, and (2) that

invention could not be predicated upon differently positioning the cylinders.

5. A patented invention cannot be held in an infringement case to be patentable because commercially better than prior devices,—especially in the absence of evidence to show that this has been recognized by the commercial world, or that the patented device has supplanted the prior device, or that it has gained any recognized position.

6. In a suit for infringement of a patent for improvements in computing scales, where the claims of the patentee are limited to a cylinder-actuating rod provided with a spiral groove, and the coacting means by which motion is imparted to the cylinder, the defendant does not infringe where its structure does not have the rod provided with a spiral, and consequently the means for producing rotary movement of the cylinders are different.

7. Where a patentee acquiesces in a ruling of the Patent Office rejecting or requiring the modification of one of his claims, neither he nor his assignee can be heard afterwards to question the correctness of the ruling.

8. Where, in an infringement case, it appears that the patentee admitted in the Patent Office that one of his claims as presented was old, by a reference to another patent, and, to avoid the reference, inserted a non-patentable limitation, his assignee, being bound by such action, cannot escape the penalty.

9. In an infringement case involving a patent for improvements in computing scales, it was *held,* affirming a decree of the lower court dismissing the bill of complaint, that certain of the claims in suit were not infringed, when limited, as they had to be, by the prior art, and that other claims were void for lack of patentable invention, as disclosed by the proceedings in the Patent Office, and by the prior art.

No. 1572.  Submitted October 18, 1905.  Decided November 22, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for the alleged infringement of a patent.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Church & Church* for the appellant.

*Mr. E. Hilton Jackson* and *Mr. H. P. Doolittle* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

This suit was brought for the alleged infringement of letters patent No. 700,919, issued May 27, 1902, to the appellant, as assignee of Austin B. Hayden, for alleged improvements in computing scales. The invention relates particularly to computing scales of the spring balance type, and its main object, as stated, is to increase the computing capacity of scales of this type. It may be said that a computing scale is a device which enables the price of the article weighed thereon to be at once read upon the scales, thus avoiding the necessity of mathematical calculation upon the part of the operator.

The art in question was quite fully developed at the time when Hayden filed the application upon which the patent in suit issued. The record discloses one patent issued some fifty years ago, and, it may be, as urged, that its device was not a commercial success, although the record is silent as to this. Like many other inventions, it very likely was born out of due season, and long before the demands of trade led to a commercial demand for computing scales. Nevertheless, the patent and others set forth in the record cannot be overlooked in considering the state of the art. Other patents were issued at later dates, disclosing various improvements, and Hayden's invention is, therefore, but one of many improvements contributed by one of many inventors. While his application was pending, it appears from an examination of the record that other inventors were at work in this art, and improvements similar to those set forth in the Hayden patent were disclosed in other applications for patents.

In the absence of testimony, the fair inference to be drawn from this fact is that, the desirability for such improvements having become known, a solution of the problems occurred to many minds, and, when that solution is shown to be the same, that no great exercise of inventive talent was called into play.

Hayden, as the record discloses, is not a pioneer in the art, but as an improver he is entitled to such recognition as his contribution to the art warrants, and his assignees to protection to the same extent, subject, however, to such limitations, if any,

as either of them permitted to be imposed upon the grant as disclosed by the file wrapper and contents of the application upon which the patent issued.   No such limitations, nor any abandonment of any part of the invention, is to be presumed, but must be shown by clear and convincing proof.   While the courts are vigilant to protect the public, which is interested in having even a lawfully patented invention kept within legal bounds, they should be equally zealous to find the contribution which the inventor has made to the art to which his invention relates, and to protect him to the full extent of that contribution; but in so doing they must give due weight to any estoppel which he has created by reason of anything done by him, or suffered to be done, either prior or subsequent to the issue of his patent, which prevents him from claiming his invention in its entirety.

To the patent we turn for a description; to the file wrapper and contents of the application, and to the prior art, for the limitations to be imposed upon the claimed invention.

Mr. Brown, appellant's expert, has fairly and clearly set forth the general construction and operation of the device of Hayden's patent.   He says:   "The two principal parts of the mechanism are as follows: 1st, a vertically arranged, non-rotating frame, which comprises and includes a vertical cylindrical casing, which incloses, conceals, and protects the major portions of the operating portions of the scale, and upon which are marked the price indications, which indicate the price per pound at which the articles weighed are to be sold.   As clearly shown in the drawings, this external casing or frame is provided with a vertically disposed sight opening, through which the coacting mechanism is observable, and along one vertical edge of this sight opening are arranged the numerals indicating the price per pound, these numerals in the illustrated instance running consecutively from 2 to 30.

"The second of these principal parts is a second cylinder, located within the casing, this cylinder constituting a computing cylinder or chart drum, upon which are placed indications indicating the weight in pounds of the article weighed, and also having other indications indicating the price of an article weighed,

VOL. XXVI.—16.

corresponding to the weight and price per pound. This chart drum, or computing cylinder, extended vertically within the external casing, and it is arranged to rotate on a vertical axis within the external casing. This casing is appropriately connected to the spring balancing mechanism and to the scale pan, so that, when the spring balancing mechanism moves up and down on the placing or removing of a load on the scale pan, the chart drum will be rotated in one direction or the other within the external casing or frame.

\*          \*          \*          \*          \*          \*          \*

"As shown in figure 2 of the drawings, the weight and value-indicating figures are placed in horizontal rows on the external surface or periphery of the rotatable chart drum of the computing cylinder, the weight indications being shown in a horizontal row at the bottom, and the price indications in horizontal rows above, there being as many of these horizontal rows of price-indicating figures as there are 'prices per pound' indicating figures on the fixed external casing. These value-indicating figures on the chart drum are computed at different rates, corresponding to the 'price-per-pound' figures on the external casing. As indicated in figure 2 of the drawing of the patent, there is supposed to be a weight on the scale pan of pounds, this weight being indicated on the weight scale; and it will be seen that in such instance the various value indications on the chart drum opposite the 'price-per-pound' indications on the fixed casing are in each illustrated instance five times as great as the corresponding 'price-per-pound' indications. The drawings illustrate only a portion of the indicating figures on the chart drum, but it will be understood in practice that this drum will be entirely covered on its external surface with figures corresponding to the weights multiplied by the figures indicating 'price per pound' on the nonrotatable external casing. Accordingly, whenever the interior chart drum is turned a distance corresponding to the load placed on the scale pan, the value of the load can be read at once opposite the figures on the external casing, which correspond to the price per pound of the article weighed.

"The various price indications on the chart drum are visible through the sight opening in the external casing.

"The mechanism whereby the chart drum is rotated a distance corresponding to the weight of the load plan is as follows: The balancing mechanism is a spring balance comprising two springs, clearly shown in figure 3 of the drawing, which are suspended from a suitable portion of the nonrotating frame of the scale. To the lower ends of these springs is attached a crossbar, in the middle of which depends a rod indicated by the letter E, this crossbar and rod constituting the runner of the scale. The scale pan is suspended from the lower end of this rod as illustrated in figure 1. When a load is placed on the scale pan the vertical runner moves vertically downward, distending the spring to an extent proportional to the weight of the load. In order to indicate the weight this vertical movement of the spring-supported runner is converted or translated into a rotary movement of the chart drum by suitable intervening mechanism. In the specific embodiment of the invention, as illustrated in the drawings, this intervening mechanism consists of a spiral groove of high pitch on the vertical rod E and two rollers journaled in suitable bearings carried by the rotatable chart drum, the bearing of one of these rollers being spring pressed, so that the rollers are held in yielding contract with the spiral groove on the rod. Consequently, as the rod moves vertically, the spiral groove thereof causes the chart drum or computing cylinder to rotate on its vertical axis.

"Accordingly, the mechanism is such that the vertical movement of the runner is translated into rotary movement of the chart drum, and the chart drum is rotated to an extent proportional to the vertical movement of the runner."

The specification of the patent ends with eleven claims, of which 1, 2, 6, 7, and 8 are alleged to be infringed. It will, however, be necessary to only consider claims 1 and 6. Claim 2 differs from claim 1, barring certain immaterial variations in phraseology, in that it limits the spring-supported, load-bearing, and cylinder-revolving rod to one that is "nonrotably" suspended from the casing. Claims 7 and 8 admittedly do not

differ patentably from claim 6, these three claims stating in varying phraseology the same invention,—one of the many examples of word painting too often found in letters patent.

Claims 1 and 6 are as follows:

"1. In a spring-balance computing scale, the combination of a suitably supported vertical nonrotatable casing provided with a price index, a vertical rotatable computing cylinder journaled in said casing, provided with cost computations, a spring-supported load-bearing and cylinder-revolving rod suspended from said casing, and connecting means between rod and computing cylinder, whereby, by longitudinal movement of the rod, rotary movement is imparted to said cylinder, substantially as and for the purpose set forth.

"6. In a spring balance, the combination of nonrotating frame providing an external casing, and having means for supporting it from above weighing springs secured at their upper ends to rigid parts of said frame, a vertically movable runner which is suspended from the lower ends of said springs and is provided with depending means to support the load, a chart drum rotatably mounted within said casing on a vertical axis, and having external horizontal rows of value-indicating figures computed at different rates, said casing having a sight opening through which portions of said value-indicating rows may be seen, and corresponding rate-indicating figures on the outer face of said frame adjacent to the value-indicating rows on the chart drum, and mechanism for translating the vertical movements of the runner into the rotary movements of the chart drum."

The defenses are the ordinary ones of anticipation, nonpatentability, noninfringement, and prior invention by one Christopher. While it will not be necessary to consider any but those of noninfringement and absence of patentable invention, we have, however, examined the evidence relating to the alleged priority of invention by Christopher, and from such examination we do not find sufficient to warrant a finding that Christopher is shown to be a prior inventor of the subject-matter set forth in the claims in suit. For a correct determina-

tion of the questions of patentability and infringement the claims must be considered in the light of the prior art and of the proceedings in the Patent Office. If the claims are valid and can be taken at their face value they are clearly infringed.

The limitations arising out of the prior art, if any, will be found in the following patents: Phinney, No. 106,869, August 30, 1870; Beckwith, No. 12,249, January 16, 1855; Babcock, No. 421,805, February 18, 1890; Freeman, No. 431,456, July 1, 1890; and Smith, No. 545,616, September 3, 1895.

Phinney discloses a spring-balance computing scale comprising a suitably supported nonrotatable case having a price index, a rotatable computing cylinder journaled in said case provided with cost computations, a spring-supported load-bearing and cylinder-revolving rod suspended from the case, and connecting means between the rod and computing cylinder, whereby a longitudinal movement of the rod rotary motion is imparted to the cylinder.

Comparing this device with the patented structure which is the subject of claims 1 and 2, it is apparent that the main difference between the two, broadly considered, is that Hayden's cylinders are arranged vertically, while Phinney's are arranged horizontally. It is shown, however, that such arrangement of a cylinder of a cost-computing scale was old long before any date that can be assigned to Hayden. Beckwith's patent No. 12,249, of January 16, 1855, discloses this. Invention cannot be predicated upon differently positioning the cylinders, and this we understand is not seriously controverted. Freeman, No. 431,-456, is another example of a rotatable cylinder carrying the computations and mounted to move vertically.

The prior patents to Babcock, No. 421,805, and Smith, No. 545,616, disclose spring-balance computing scales, having suitably supported horizontal stationary cylinders (or, as in the Babcock patent, an equivalent therefor), provided with price marks and rotatable chart drums operatively connected to the vertically movable load-supporting rod. In the light of these patents, and especially the Smith patent, we can discover little room for broad claims for a combination of elements, such as set.

forth in the claims in controversy.    While Smith's construction differs from that of the patent in suit in the relative arrangement of the casing and cylinder, in other respects they differ patentably only in details of construction.    There being no invention, in view of the prior art, in substituting for the horizontal case and cylinder of the Smith patent the old vertical arrangement of those parts, the first and second claims of the patent in suit must, if they are to be held valid, be limited to the specific forms of the parts set forth in the claims.    The line of demarcation between Hayden's patented structure and those of the prior art is, at the best, but slight.    His device may be commercially better than the prior devices, but there is no evidence before us to show that this has been recognized by the commercial world, or that the patented device has supplanted the prior devices, or that it has gained any recognized position. The record is silent as to all these points.

It being the duty of the court, as stated, to find what contribution Hayden has made to the art, we turn to the specification to find what Hayden had actually contributed.    We find that, broadly considered, the elements of the claims referred to are old, and that they have been arranged in substantially the same manner and thereby have produced substantially the same result.    We, however, find some specific forms of parts of the device that apparently are new, and therein lies the novelty of the device.    The main novelty seems to reside in the construction of the spring-supporting, load-bearing, and cylinder-revolving rod, and the means by which the longitudinal movement of that rod produces the rotary movement of the cylinder.    The specification states that the load-supporting and cylinder-actuating rod is provided with a spiral groove which moves between rollers centrally located on the inner surface of the bottom of the cylinder.    It further states that "it will be noted that, in the construction shown, the rod E is nonrotatable, and this is the preferred construction.    The spiral rod passing through the lower ends of the casing and serving, by means of its connection with the two cylinders, to rotate the computing cylinder, is regarded as the essence of this feature of the invention,

however, regardless of the precise details of connection between cylinders and rod. The spiral of the rod E may be regarded as a motion-translating member, and the anti-friction rollers *ff*, engaging said spiral, may be regarded as an anti-friction member coacting with said spiral. It is necessary that one of said motion-translating members be supported by the spring of the scale to have a simple vertical movement, and that the other motion-translating member shall be connected directly to the computing cylinder to impart rotary motion thereto. Thus, one of said motion-translating members moves with the computing cylinder about a vertical axis, while the other acts as a spring-supported runner, which engages the cylinder carried or connected member and has its own vertical movement translated into a rotary movement."

We have not overlooked the statement that in the preferred construction the rod is nonrotatable, and that claim 1 is not limited in terms to a nonrotatable rod. Nor have we overlooked the fact that neither in claim 1 nor 2 is there a limitation in terms to the specific construction of the rod, and to the specific means by which, in connection with the rod, movement is imparted to the cylinder. It is evident that Hayden thought that his invention was broader than in our opinion it proves to be, and so claimed it. Nevertheless, we can see no escape from the conclusion that claims 1 and 2 are devoid of patentable inventions unless limited to combinations, one element of which is a rod provided with a spiral adapted to engage with rollers coacting therewith. It may be that, when so construed and limited, claim 2 will not patentably differ from claim 3; but it is unnecessary to pass upon that question at this time. If we are correct in limiting claims 1 and 2 to the specific form of the rod and the coacting means by which motion is imparted to the cylinder, then, admittedly, the defendant does not infringe, for its structure does not have the rod provided with a spiral, and consequently the means for producing rotary movement of the cylinder are different. It is admitted by appellant's counsel that the appellee is not shown to have used the specific form of translating device shown and described in the patent.

What we have said in reference to claims 1 and 2 applies equally to claims 6, 7, and 8, for each of these has as an element mechanism for translating the vertical movement of the runner into the rotary movements of the chart drum. This mechanism is the rod provided with spiral and the rollers journaled on the inner surface of the bottom of the cylinder. The defendant does not employ such mechanism, and its mechanism cannot be held to be an equivalent. Claim 6, however, in our opinion, cannot be held valid in view of the proceedings in the Patent Office, as shown by the file wrapper and contents of the application upon which the patent issued. It appears that a claim was presented identically the same as this claim, save that it omitted the word "depending" before the phrase "means to support the load," or, in other words, was not limited to a structure where the means for supporting the load to be weighed was below the scales. The office held that the claim as presented was not patentably distinguished from a prior patent, saying: "Upon consideration of claim 6, preparatory to the declaration of interference, it is found that the claim does not clearly and patentably distinguish from the scale shown in the patent to Herr, No. 651,801, June 12, 1900, price scales, and it is therefore necessary to reject the claim. It is believed, however, that the claim may be rendered allowable by inserting *depending* before 'means' in line 6."

This Herr patent is not in evidence, but that is immaterial, for, whether the examiner was right or wrong, the patentee having acquiesced in the ruling, neither he nor his assignee can be heard to question the correctness of the ruling. The courts have gone so far as to hold that, even where the ground of an objection made by the Patent Office and acquiesced in by the applicant was later held by the Supreme Court not to be a valid one, nevertheless the applicant thereafter is bound by it. *Blades* v. *Rand, McN. & Co.* 27 Fed. 93. Of course, it is not contended by appellant that the claim can be read as though the word "depending" had not been inserted; but, as we understand it, the rule goes further than merely holding that the limitation cannot be read out of the claim. It goes to the extent

of holding that "the claim, as allowed, must be read and interpreted with reference to the rejected claim." *Hubbell* v. *United States,* 179 U. S. 77, 45 L. ed. 95, 21 Sup. Ct. Rep. 24. A claim differing from claim 6 only in omitting the word "depending" having been rejected, the allowed claim must depend for vitality upon the fact that it involved invention in a computing scales to employ depending means for supporting the load to be weighed. Some means, of course, had to be employed for supporting the load, and the substitution of one old arrangement for another would scarcely involve or show invention. Depending means for supporting the load were old and most common in computing scales. Examples are to be found in the patents to Babcock, Beckwith, Smith, and others heretofore cited. The depending means for supporting the load to be weighed being old, their substitution in an old combination is insufficient to warrant a finding of patentable invention. The patentee having admitted that the claim as presented was met by the reference, and having, to avoid the reference, inserted a nonpatentable limitation, his assignee, being bound by such action, cannot escape the penalty.

Claims 7 and 8, being but restatements in somewhat different phraseology of the same alleged invention as recited in claim 6, are also devoid of patentable invention. Our conclusion is that the claims in suit are not infringed when limited, as they must be, by the prior art, and that claims 6, 7, and 8 are void for lack of patentable invention, as disclosed by the proceedings in the Patent Office, and by the prior art.

It follows that the decree of the Supreme Court of the District of Columbia was correct, and it will therefore be affirmed with costs. It is so ordered. *Affirmed.*

An appeal to the Supreme Court of the United States was allowed December 5, 1905.