WRITING MACH. CO. v. ELLIOTT & HATCH BOOK-TYPEWRITER CO.

(Circuit Court of Appeals, Second Circuit. May 9, 1901.)

No. 125.

PATENT—VALIDITY—INFRINGEMENT.

The Crary. patent, No. 477,517, for improvements in typewriting machines designed for printing in books of record, claim 1, contains a single novel feature, consisting of a mechanical connection between the table on which the book rests and the leaf-supporting platen by which the latter can be adjusted at whatever, elevation may best suit the thickness of the book, and rigidly held in such place. *Held* not anticipated, and valid, and, in view of the prior condition of the art, sustains a construction broad enough to cover any such means of adjustment, and, as so construed, is not infringed by a device which is adjustable to and from the table, and where its platen is a swinging plate, which, when it is supported on the open book, receives the type mechanism, but is kept in its place by the support it receives from the book.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal from a decree of the circuit cour. for the Southern district of New York (106 Fed. 507), which dismissed the complainant's bill in equity for an alleged infringement of claim 1 of letters patent No. 477,517, dated June 21, 1892, and issued to Joseph M. Crary, as inventor, for improvements in typewriting machines. The complainant is the owner of the patent.

D. Walter Brown, for appellant.

Thomas Ewing, Jr., and P. T. Dodge. ror appellee.

Before WALLACE and SHIPMAN. Circuit Judges.

SHIPMAN, Circuit Judge. On January 3, 1891, the inventor, Crary, filed his application in the patent office for an improved typewriting machine, and letters patent therefor, No. 477,353, were issued to him on June 21, 1892, the date of the patent in suit, for which he had filed an application on November 13, 1891. Each invention was especially intended for printing in large books of record, and in such a machine the use of a flat platen or plate is necessary to support the leaf to be printed and to remove the curvature of the leaf created by its attachment to the back or hinge of the

book. The platen of 477,353 was stationary, and the book was adjusted to the platen; that is, was moved upon the table up or down as the varying thicknesses of books required. This method was obviously inconvenient, required frequent handling of heavy books, and the study of the inventor resulted in the improvement described in claim 1 of the patent in suit, which, speaking very generally, consisted in the combination with other elements of a platen adjustable to and from the table top. This improvement was a substantial, independent, and distinct subject of invention, but the complainant is in error in supposing that the patent is to be examined without reference to the state of the art as disclosed by the inventor's earlier invention. Ten months after he had applied for a patent for a typewriting machine with a fixed platen, he made application for the improvement now in controversy. As a matter of fact, it was an improvement upon the senior invention, and was the introduction into book-typewriting machines of an adjustable leaf-supporting platen connected with and co-operating with the other parts of the machine. Crary apparently originated the improvement, but it was, strictly speaking, a secondary invention, for it performs the function previously performed by the stationary platen, although it performs it in a much better way than had been accomplished by its predecessor. Walk. Pat. § 359. It was a substantial and meritorious invention, and was not limited to the details of the mechanism shown in the specification. The mechanism of claim 1 is described in the opinion of the circuit judge as follows:

"To a stationary table is adjustably connected a rigid, flat, leaf-supporting platen. This platen is connected to the table, as shown in the specifications and drawings, by four slotted links, which at their upper ends are pivoted to ears of the platen. Said links are slotted, and slide and oscillate on rods supported below the table top. Clamp nuts enable the operator to fix the platen at any height above the table, thus adjusting it in a rigid position at whatever elevation may best suit the thickness of the book which lies upon the table."

### The specification says that:

"The platen, by means of the links, is adjustable to the thickness of the book upon the table, and is then fixed rigidly by the clamp nuts. Where a portable table is not desired, any stationary table may be used to support the book-printing device, and the links may in such case be used independently of the tie-rods by setting them at any suitable angle with the platen, to sustain the latter at a suitable height above the table to suit the thickness of the book; the links, when adjusted, being clamped rigidly to the ears, C', by the screws U'. The links, with such construction, merely rest by their ends upon the table top which supports the book, but serve as adjustable legs to set the platen above the table top at a suitable distance to place the book beneath the platen."

It thus appears that the platen, after adjustment, is rigidly clamped at its four corners by the clamp nuts, and is a rigid, flat surface, upon which the type mechanism is entirely supported, and in this respect the device differs from the invention of 477,353, in which the type mechanism was supported wholly on the bed which receives the book. Claim 1 is as follows:

"(1) In a typewriter, the combination with a table and its supports of a flat platen adjustable to and from the table top, type mechanism, and means supported wholly upon the platen for moving the type mechanism transversely and longitudinally over the platen, as and for the purpose set forth."

In the defendant's machines, which are made substantially in accordance with the description contained in letters patent No. 620,125, dated February 28, 1899, and issued to Walter P. Hatch and Frederic W. Hillard, the platen is loosely hinged by hooked lugs to a vertically adjustable bar upon a frame at the back of the machine, called a "lift frame," upon which, as a pivot, the upper end of the platen turns, and, if the book does not intervene, the lower end will rest upon the table. When the machine is in use, the open book is placed in position, the platen is turned down upon it, and can be turned back when a new leaf is to be written upon. "The machine bedplate is likewise hooked upon this same bar, and the bar, being lifted into engagement with it, serves also as a convenient hinge about which the machine bedplate with its type mechanism may be turned up and out of the way for the purpose of arranging the book for writing, or turning the pages. The adjustment of the platen depends consequently upon the thickness of the underlying portion of the book, and is directly determined by the thickness of this underlying portion and any blocks which may be placed under the book." The question of infringement turns very much upon the point of the conformity or nonconformity of the defendant's adjustable platen to the corresponding platen described in the patent in suit. The defendant's device is, in a certain sense, adjustable to and from the table,—that is, the upper end of the platen swings on the vertical adjustable bar on the lift frame, and the lower end loosely rests on the table; but it is not the adjustable platen of the complainant's patent, which is rigidly clamped at its four corners to the table, capable of being moved from the table top, "and there retained in place rigid, and in a proper plane to receive the impact of the type," and which is kept in place by its attachment to the other parts of the machine. The defendant's platen is a swinging plate, which, when it is supported on the open book, receives the type mechanism, but is kept in its plane by the support it receives from the book, and the book is really the thing which supports the type mechanism. The decree of the circuit court is affirmed, with costs.