## AMERICAN LAUNDRY MACHINERY CO. v. UNITED STATES HOFFMAN CO.

(Circuit Court of Appeals, Second Circuit. March 2, 1921.)

No. 27.

1. Patents ⊂⊃168(2)—Claim narrowed to secure allowance cannot be construed to cover rejected claims.

Where an inventor acquiesces in the rejection of a broad claim, and substitutes phraseology which results in the grant of a narrower claim, he cannot insist on a construction of the claims allowed which would cover that which has been previously rejected, or would cover prior devices which are operative under the original claim.

2. Patents ⊂⊃328—962,213, claims 5 and 9, for cuff-pressing machine, held not infringed.

The Hagan and Cooper patent, No. 962,213, claims 5 and 9, for an improvement in cuff-pressing machines, which, to secure an allowance, were limited to devices for drying the cuffs while they were being ironed, to secure the polished finish, is not infringed by a suit-pressing machine, in which the drying is done only after the pressure has been removed, to avoid the shiny surface which is objectionable in pressing suits.

Appeal from the District Court of the United States for the Southern District of New York.

Suit for infringement of patent by the American Laundry Machinery Company against the United States Hoffman Company. Decree for defendant, and plaintiff appeals. Affirmed.

Louis Prevost Whitaker, of New York City (Livingston Gifford, of New York City, and Brockett & Hyde, of Cleveland, Ohio; of counsel), for appellant.

Charles Neave, of Boston, Mass., and George E. Cruse and Maxwell Barus, both of New York City, for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant brought this suit for infringement of letters patent No. 962,213. It is a manufacturer of laundry machinery. Its chief business is the sale of equipment for laundries, while the appellee is the manufacturer of garment pressing machines—that is, machines for pressing suits of clothes and woolen clothes. Its garment presses were made under patents which it owned. They appeared on the market as early as 1910. The appellant sold the garment press manufactured by the appellee as a jobber up to 1911, and in 1918 brought out a garment pressing machine.

The claims involved are 5 and 9 and read as follows:

"5. The combination with the heated platen and a hollow padded work support movable relatively toward and from the platen to press the material between them, the platen being adapted to co-operate with substantially the entire working surface of the bed at the same time during the pressing operation, of means for passing air through the padding to remove the moisture therefrom during the pressing operation."

"9. In an ironing machine, the combination with a heated platen of a hollow perforated bed having a padded covering and formed to permit the platen to co-operate with the entire working surface of said bed at the same time, and means for passing air through the bed and the padding at the edges of the latter during the pressing operation."

The application for the patent was filed in December, 1904. From the file wrapper and contents, it appears that claim 5, as originally filed, was objected to and rejected on the patents to Benjamin, No. 675,435, and Ericson, No. 622,336. This claim was again redrafted, and rejected by the Patent Office on the same Benjamin and Ericson record, for the reason that, it was said, no invention would be required to supply the bed in the Benjamin patent with air, or to substitute a pump for the blower in the Ericson patent. Claim 5 was then amended so as to add the words to "press the material." Claim 9, as originally filed, was rejected because of the patents to Benjamin and Ericson, and the claims were redrafted, so limiting them as to keep the pad on the bed dry so that the speed of the operation of the machine could be increased and therefore its capacity. Nowhere in the original claims, or any of the proposed amended claims, or the final accepted claims, did it appear by the language used that the applicant intended there would be any drying of goods after the pressing operation.

The claims as allowed provide that the pressing iron "remains in contact with the goods during the entire pressing and drying operation," and the patent describes the operation of the machine so that the pad work support with the goods is raised against the heated platen, and that the parts are permitted to remain in this position as long as desired; the moisture being removed from the pad and the goods by the air pressure apparatus connected with the chamber. The drying of the goods, so much as there is, must be while the platen and padded work support are in contact with the goods during the entire pressing and

drying operation. The whole idea and scope of the invention, as finally allowed, is, as is stated in the patent, to keep its pad dry, "this result being accomplished by varying the air pressure at the upper side of the padded surface and removing the moisture and steam as it is liberated or generated by the application of the hot iron." It thus appears, from the proceedings in the Patent Office and the claims as finally allowed, that the improvement in the art must be limited to the sense in which the words are employed. This is essential, in view of the prior art, to escape anticipation by the Benjamin and Ericson patents.

We agree with the court below in its conclusions that the prior art discloses that to blow air through the pad of a pressing machine operated on the rotary or progressive ironing plan was old; also to press the article while in a fixed position by bringing down upon it a heated platen, which remains stationary upon it, except for the downward pressure, was old and extensively used; and the passing of air through a perforated pad was old and used in stereotyping matrices. The appellant's patent, however, provides for perforating the plate or pad support of a laundry machine for the purpose of passing air through it either by pressure or suction. A method of drying the pad was long needed in the art, and the appellant's patent made the way for this accomplishment. In this respect, there was progress and invention. The patentees have invented a simple, but efficient, way for this accomplishment. But, because of the state of the prior art, we think the patentees were so limited in the claims which were allowed them in the Patent Office, by the words used in their claims, that they have restricted themselves to a construction in which the air passed through the pad during the period of the pressing operation.

[1] Where an inventor, seeking a broad claim, as the patentee did here, finds his claim rejected, and after rejection acquiesces, and substitutes phraseology which results in the grant of a narrower claim, he cannot insist that the construction of the claim allowed shall cover that which has been previously rejected. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 40, 14 Sup. Ct. 28, 37 L. Ed. 989. Nor can he maintain successfully that his granted claims cover prior devices which are operative under the original claims which have been rejected. Hubbell v. U. S., 179 U. S. 80, 21 Sup. Ct. 24, 45 L. Ed. 95; Leggett v. Avery, 101 U. S. 257, 25 L. Ed. 865; Nathan Support Co. v. Cammeyer (C. C. A.) 264 Fed. 968.

[2] Again, the evidence is quite clear here that the method of performing the work of laundering clothes and pressing garments is not the same. In the laundry press, the goods are put in wet or dampened, while in the garment press the goods are put in dry and steam applied to the garment above or below, or both, to wet it. One of the objects desired in the laundry press is that the hot pad head is used, not only to iron or press the goods to give them a "beautiful domestic finish," but to dry them by converting the steam into moisture, which is absorbed by the pad. On the other hand, the garment press desires no polish, and it is necessary that goods remain dry during the pressing

operation, so that the wrinkles may be taken out where not desired, and creases put in them where desired. In the laundry machine it is desired that all moisture be taken out of the goods during operation, and in the garment pressing machine it is the most steam which softens the fabric, so that it can be restored to its original shape while being pressed, and after the pressing operation is completed the goods are still soft, moist, and hot, and the air is then used to dry the garment quickly.

With these differences in mind, can it be said that the appellee's machine infringes appellant's patent? The appellant's catalogue describes the pressing system of ironing. It says, in substance, that the pressure system is by the application of extreme pressure to a flat padded surface against a hot polished surface, and that the dampened goods, being thus subjected to pressure, take on a beautiful domestic ironed finish, caused by the great pressure which flattens the wove of the goods, brings the starch to the surface, and makes a perfectly smooth shirt, and at the same time drying out the dampness, leaving the material dry and extra stiff. There is no motion or friction. The goods remain under pressure until dried, obviating any wear or stretching of the goods, and making it possible to mold the shirt into the proper shape and give to it the character that cannot be obtained any other way. And by the appellant's witness it appears that in the appellee's garment press, when the head is brought down in position of pressure, the valve can be opened to throw steam upon the goods which are on the padded support; that the goods are then placed under pressure by the pressure on the treadle, and the head remains there for a time dependent upon the personal equation of the operative, usually a few seconds, and then allowed to go up; then he opens the air valve, which causes currents of air to shoot down through the goods, and through the padding and the perforations of the head, and out of the machine, thereby drying the goods while in this position on the machine pad. The treatment given to the garment is described as sponged, pressed, and dried, while in situ on the padded work support in its original position.

It thus appears that, according to the appellant's contention, its machine would give a suit of clothes a beautiful domestic ironed finish after it has been pressed, and would flatten the wove of the material in so doing. In the garment press machine, instead of drying the pad while the goods are under pressure, the pad and garment thereon are wet, and kept wet by steam. Air is applied only after the pressing operation has been concluded, and it is then used, not to dry the pad, as in the laundry machine, but to dry the garment, for the garment, unlike the starched cuff or shirt, that must be dry when the platen is lifted, is and must be wet when the press is opened, so as to keep the garment from becoming shiny by drying during the pressing operation. In the appellant's machine, provision is made to supply steam through the press cloth on the heated platen, and it also supplies steam to the garment from the heated buck through the padded work support, thus insuring that both sides of the garment are kept wet during the pressing operation. In the garment press, the pad is purposely wet during each pressing operation, and the air is used solely to dry the garment after the

pressing operation. Each garment, when pressed, is treated with steam to or through the pad, and the pad is purposely wetted.

It is apparent that the appellant's machine relates to ironing, pressing for starched goods and steam laundry work, where as the appellee's relates to pressing machines used for suits of clothes or similar heavy woolen goods. The desired result in each of the operations is different. They are separate industries. Both presses have an upper heated platen—the iron—and the lower padded platen, the ironing board. In the cuff press of the patent, the cuff is put into the press, dampened, and is then dried in the contact with the iron, so as to acquire the beautiful domestic ironed finish. In the laundry machine, the pad on the ironing board member, against which the cuff is being pressed, must be dry at the end of the pressing operation. This occurs when the iron is removed from the cuff. If the pad is not dry, the cuff will be wet, and the desired finish cannot be obtained. In the appellant's garment press, the clothes are put in dry, and immediately moistened by hot steam, and they are kept moist as long as they are kept in contact with the heat pressing surfaces. Indeed, if the clothes become dry in the press, they will get shiny surfaces, and shiny surfaces on clothes are undesirable. If the air was sent in before the press was opened, there would be no drying effect.

The appellant's laundry press required that the pad and goods must be dry when the iron is raised, while in the appellee's press the pad and goods must be wet when the iron is raised. The difference is clear. The air is sent through the bed and the padding during the pressing operation, according to the appellant's claims, and that is done in practice in appellant's machine during the contact of the iron and ironing board, whereas in appellee's machine the air is turned on by treadle operation from the air apparatus after the platen has been raised. The inventors say:

"Our invention also provides an ironing or pressing machine of the type embodying a padded work support and a pressing iron movable relatively to each other, the latter of which remains in contact with the goods during the entire pressing and drying operation."

And they further state:

" * * * In a pressing machine the goods remain stationary and are given the requisite amount of stiffness by the drying of the starch in them while stationary and under pressure."

The patent further says that—

"When the operation is finished pressure upon the releasing treadle 34 flexes the toggle, allowing the bed to fall, and he then draws forward the pad support and removes the goods, applying another cuff, and proceeding as before."

This is a different operation than appellant's machine provides, to wit, that in practice the suction means of drying in appellee's machine are operated after the platen has been raised from the pad or is about to be so raised; and it is abundantly shown that there is no reason why

the drying process should be begun before the pressing of the cloth garment is finished.

We agree with the District Court that, while the patent is valid, the appellee's machine does not infringe.

The decree is affirmed.