## RACINE CONFECTIONERS' MACHINERY CO. v. METRO CHOCO-LATE CO.

(District Court, E. D. New York.   April 16, 1924.)

1. Patents ⬩⬩⬩328—971,097 for lollypop manufacturing machinery, held not a pioneer patent.

Woolf patent, No. 971,097, for lollypop manufacturing machinery, *held* not a pioneer patent, entitled to a wide range of equivalents, but merely a patent for an improvement on the prior art.

2. Patents ⬩⬩⬩168(1)—Effect of argument before Patent Office on scope of claim stated.

The argument made before the Patent Office cannot control or restrict the plain language of a claim finally allowed, but the applicant cannot claim broadly anything that was rejected by the Patent Office, unless finally allowed in the same language, and, if the patent bears on its face a particular construction, the argument made before the Patent Office may confirm that construction.

3. Patents ⬩⬩⬩328—971,097, claims 1, 2, 4, 12, for lollypop manufacturing machinery, held valid.

Woolf patent, No. 971,097, claims 1, 2, 4, 12, for lollypop manufacturing machinery, held valid as a patent for an improvement on the prior art.

4. Patents ⬩⬩⬩178—Range of equivalents of patent for improvement limited to extent necessary to protect actual invention.

The range of equivalents of patent for improvement on prior art is limited to the extent necessary to protect the actual invention.

5. Patents ⬩⬩⬩178—"Pioneer invention" defined.

An invention which does not perform a function that was never performed by any earlier invention but merely performs its function in a substantially different way is not a "pioneer invention" and the patent therefor is a secondary patent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Pioneer.]

6. Patents ⬩⬩⬩243—Rule as to infringement of combination claims stated.

Combination claims are not infringed unless all of the elements of the combination are present in defendant's machine.

⬩⬩⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Patents ⬤⟹328—971,097, claims 1, 2, 4, 12, for lollypop manufacturing machinery, held not infringed.**

Woolf patent, No. 971,097, claims 1, 2, 4, 12, for lollypop manufacturing machinery, *held* not infringed.

In Equity. Suit by the Racine Confectioners' Machinery Company against the Metro Chocolate Company. Decree of dismissal.

MacLeod, Calver, Copeland & Dike, of Boston, Mass., and Douglas, Armitage & McCann, of New York City (George P. Dike, of Boston, Mass., of counsel), for plaintiff.

Morris Kirschstein, of New York City, for defendant.

CAMPBELL, District Judge. This is a suit in equity, brought by the plaintiff to restrain the alleged infringement by the defendant of patent No. 971,097, issued by the United States Patent Office to Frank H. Woolf, assignor to Racine Engine & Machinery Company, dated September 27, 1910, and for an accounting and for damages.

The defendant has interposed the twofold answer of invalidity and noninfringement.

On December 27, 1917, the corporate name of the plaintiff was duly changed from Racine Engine & Machinery Company to Racine Confectioners' Machinery Company.

The plaintiff bases this suit on claims 1, 2, 4, and 12 of said patent, which read as follows:

"1. The combination in a candy machine of a suitable frame, molding rolls mounted in said frame, one of said rolls being provided with mold cavities and a groove for each of said mold cavities, means for delivering sticks one by one into said grooves, means for advancing said rolls with a step by step movement, and means adapted to thrust the sticks into the material contained within the mold cavities.

"2. The combination in a candy machine of a suitable frame, molding rolls mounted in said frame, one of said rolls being provided with mold cavities and a groove for each of said mold cavities, means for delivering sticks one by one into said grooves, means for advancing said rolls with a step by step movement, and means for thrusting the sticks into the material contained within the mold cavities, the mechanism being timed so that the rolls are at rest when the stick-thrusting mechanism is operative."

"4. The combination in a candy machine of a suitable frame, molding rolls mounted thereon, gears connected to said rolls whereby they are caused to move synchronously, a ratchet wheel connected to one of said rolls, a movable arm provided with a pawl adapted to engage said ratchet wheel, means for moving said arm forward and back to engage said pawl with said ratchet wheel and to disengage it therefrom to give the rolls alternate periods of movement and rest, one of said rolls being provided with grooves, means for delivering sticks into the grooves, a plunger adapted to move the sticks severally endwise, and means for operating said plunger timed to operate during the at rest periods of the rolls."

"12. A roll for candy machines provided with mold cavities and grooves, said grooves being disposed longitudinally of said rolls, one being provided for each mold cavity and each groove opening into its respective mold cavity, so that a stick lying in a groove may be pushed endwise into the corresponding mold cavity."

The patent in suit is for a machine for the manufacture of so-called lollypops or all day suckers, which are pieces of candy on the end of a stick.

Prior to the invention of the patent in suit lollypops were made by hand, and plaintiff contends that the patent in suit is a pioneer invention. Defendant denies plaintiff's contention.

The defendant offered in evidence the following patents to show the prior state of the art, all of which were issued by the United States Patent Office. The patents so offered are not confined to candy-making machines, because the patentee says (lines 29 to 43, page 1, of the patent in suit):

"It is to be understood that my invention is not limited to a machine intended to work or operate upon candy material alone, as machines constructed according to my invention are adapted for use with any class of material where the object is to combine tablets of material with sticks; and it is to be understood that the words 'tablet' and 'sticks' as used throughout this specification and in the claims, are not limited to any specific form of tablet or sticks, and the word 'sticks' or 'stick' is used generally to include any form of skewer, pin, etc., whether constructed of wood or metal."

No. 850,780, granted to William Poppendieck, dated April 16, 1907, for a machine for enveloping a metal core in a plastic body, discloses a hopper which contains the pins which I consider the equivalents for sticks. These pins are fed by gravity to a drum having a longitudinal groove to receive one stick at a time. The drum revolves, and, when the proper point is reached, the pin is forced by a plunger operated by a lever into the plastic mass being molded or formed. The insertion of the pin into the plastic mass in this patent seems mechanically to be accomplished by the same means as are used to insert the stick into the plastic mass in the patent in suit.

No. 512,061, granted to Frank Schafer, dated January 2, 1894, for machine for coiling or winding match splints, discloses a hopper in which are splints, a roll with longitudinal grooves in which splints received from the hopper are carried to some other part of the machine for a further operation.

No. 593,067, granted to William A. Gowen, dated November 2, 1897, for skewer machine, discloses a hopper in which are placed sticks which are fed down by gravity into the space between the connecting rods on the conveyor which carries them to some other part of the machine to be sharpened.

No. 110,630, granted to P. Cauhape, dated January 3, 1871, for improvement in pill machines, discloses a mold in two parts, either hinged together or not, each having part of the cavity from which a groove extends to one side so that when the two parts of the mold are closed together a pin may be thrust into the pill for removing and holding it and also a bar with the pin or needle for inserting into the cavity and taking the pill therefrom.

No. 9,455, granted to E. A. Pond, dated December 7, 1852, for improvement in pill-making machines, discloses two cylinders having a number of recesses in their peripheries and at corresponding distances apart in each cylinder, the cylinders being placed parallel with each other, their peripheries nearly touching, the recesses of the one registering with the other. The pill mass is fed in, and being pressed into the recesses, is formed into pills.

No. 407,233, granted to Carrick P. Oldham, dated July 16, 1889, for machine for stamping and molding soap, discloses a circular die plate with molding cups on its upper face, in each of which cakes of soap roughly approximating the size and shape of the finished cakes while in a plastic condition and yet sufficiently hard to retain their shape are placed, and a plunger with a die, which is forced down and into the cup so as to firmly compress the cakes of soap and give them the requisite density, solidity, shape, and size.

No. 365,450, granted to Walter E. Coleman, dated January 25, 1887, for manufacture of candies, toy confections, etc., discloses a process in which the plastic mass is fed from a hopper into molds on an endless belt, and as the belt travels the plastic material is carried under a roller to compress the material into the mold cavities.

No. 725,065, granted to Paul R. Franke, dated April 14, 1903, for machine for making pralines, which is described in the patent (page 1, lines 26–77) as follows:

"In the present form of the invention the dipping device is shown applied to a core-molding machine in which the sugar almond or nut paste is contained in a receptacle $a$, the opening $a'$ in the bottom of which is closed by a rotary disk $b$, the periphery of the latter being furnished with recesses $d$ at uniform distances apart, into which when the disk rotates the material forming the core is pressed by a weight $q$, which bears thereon.

"In the molds $d$ radially arranged ejectors $g$ are moved, which on their ends turned toward the center of the disk carry pins $s$, on which are rollers $r$, by the help of which they are guided in a cam-path $h$ formed in a fixed disk $k$. (See Figs. 3 and 4.)

"The cam-path $h$ is so formed that by means thereof the ejectors $g$ are alternately drawn back into the molds $d$ and moved outward in the direction of the periphery of the disk, the ejectors on approaching the opening $a'$ in the bottom of the feed receptacle $a$ being moved back into the molds and after the molds have been filled remain stationary until the molds come nearly to their lowest position, whereupon the ejectors are pushed outward by the cam $h$ and thereby the finished cores are ejected.

"The ejected cores are received by hooks $m$, which hang perpendicularly from an endless chain $n$, carried on the wheels $pp'$ and moving forward at the same rate of speed as the molding disk $b$, so that when a form reaches its lowest position a hook $m$ is below it to receive the ejected core.

"Beneath the chain wheel $p'$ is a trough arranged at such a height that the hooks $m$ dip into it, and thereby the cores carried by them are covered with chocolate which is contained in the trough.

"After the dipping has been effected the finished pralines are removed from the hooks by hand or by means of suitable rakelike implements.

"For precisely guiding the hooks $m$ suspended freely from the chain $n$ a disk $o$ may be arranged behind the molding disk $b$. The disk $o$ is indented at regular intervals, and in these indentations $i$ the hooks $m$ approaching the ejecting spot are received, so that they are kept quite concentric to the form, which is at the time in the lowest position."

No. 8,657, granted to B. O'Brien, dated January 13, 1852, for improvement in machines for making sugar candy, discloses molding or pressing rolls having shapes or words on the periphery thereof, which they impress on a plastic mass.

No. 601,886, granted to John S. Crowell, dated April 5, 1898, for molding machine for confectioners' use, discloses a roller which co-operates with a platen formed with mold cavities to form a shaped mass.

No. 678,359, granted to John Thomas Davis, dated July 16, 1901, for briqueting machine, discloses one or more series of molds which receive the material to be treated, and are carried by a chain to a toothed wheel or roller for compressing the molds and their contents.

No. 690,716, granted to Benjamin Fletcher, dated January 7, 1902, for continuous molding machine, discloses an endless chain of molds traveling in a horizontal position, and when filled passing between upper and lower compression wheels.

No. 724,588, granted to William A. Koneman, assignor to International Fuel Company, dated April 7, 1903, for briqueting machine, discloses endless belts carrying co-operating mold sections and a compression plunger.

No. 634,185, granted to Henry B. Pinney, dated October 3, 1899, for confectionery machine, discloses a tray with molds and plungers which are forced down to compact the material.

From an examination of the said patents it appears as follows:

The molding of a plastic mass into desired form by a pair of co-acting rolls between which the mass is fed, one of the rolls having molded depressions and the other smooth, was well known in the art. The providing adjacent the mold cavity a groove to receive a stick and a roll with longitudinal grooves, to remove sticks from a receptacle and carry them in such grooves to some other point in the machine for some other operation, was also well known in the art. The inserting of sticks or skewers by mechanical means in the plastic mass in the mold, or being molded, was also old in the art. These constitute the essential elements of the patent in suit.

There is no direct anticipation of the patent in suit found in the prior art, but each of its essential elements are found in some other combination, and in most instances in machines for making candy; and in my opinion all these elements are disclosed in the patent No. 725,065, issued to Franke.

[1] Plaintiff contends that the patent in suit is a pioneer patent, and that it is entitled to a wide range of equivalents. With this contention I cannot agree, because I do not believe that the patent in suit is a pioneer invention as such invention is defined by the Supreme Court in Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, at pages 561, 562 (18 Sup. Ct. 707, 718, 42 L. Ed. 1136) where Mr. Justice Brown, writing for the court, says:

"To what liberality of construction these claims are entitled depends to a certain extent upon the character of the invention, and whether it is what is termed in ordinary parlance a 'pioneer.' This word, although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before."

As hereinbefore stated, all the essential elements of the patent are old, and in my opinion, limited as the patent is by the wording of its claims, as the same must be construed, it is for an improvement of what had gone before.

The patentee, when he presented his application to the Patent Office, presented nine claims of which claim 4 was rejected on O'Brien,

No. 8,657, claims 5 and 9 were rejected on Baker, No. 165,527, and claim 7 was rejected on German patent No. 109,162, by the examiner. The applicant accepted this decision, canceled claims 4, 5, 7, and 9, renumbered the remaining claims 1 to 5, and submitted four new claims. These new claims were rejected, and the applicant rewrote claims 1 to 5, both inclusive, and submitted six additional claims. Claims 6, 7, 8, 9, and 12 were rejected because they did not distinguish over the patents last cited, and claim 10 was rejected on Poppendieck, No. 850,780. The applicant then canceled claims 6, 7, 8, 9, and 10, and submitted substitute claims therefor. As to claim 12, which was rejected, and which reads as follows:

"A roll for candy machines provided with mold cavities and grooves, said grooves being disposed longitudinally of said roll, one being provided for each mold cavity and each groove opening into its respective mold cavity, so that a stick lying in a groove may be pushed endwise into the corresponding mold cavity."

The attorney for the applicant contended that it should be reconsidered for the following reasons:

"None of the references of record show a roll provided with mold cavities and grooves, said grooves being disposed longitudinally of said roll, and each groove opening into its respective mold cavity. The importance of this claim to applicant is due to the fact that if he has the patent only for the combinations of elements composing his machine other parties will be at liberty to provide the rolls with the mold cavities and stick grooves therein, for different forms and sizes of candy, whereas, as this specific form of roll is new and applicant is clearly entitled to a claim thereto, the claim should be allowed, not only because of the protection which it affords him, but because of the novelty defined by the claim itself."

On the argument claim 12 was allowed and claims 6 and 7 were rejected upon Franke or Lichtenburg, in view of Poppendieck, and claims 8 and 10 were rejected upon Poppendieck. Claims 6 and 7 were then canceled by the applicant, and two new claims substituted. The applicant's attorneys, in urging the allowance of these claims as a part of their argument, said:

"These claims distinguish from the Poppendieck machine as they call for 'molding means' and a 'molding roll' adapted to remove the sticks from the receptacle, an entirely different construction from Poppendieck's and one which dispenses with all of Poppendieck's complicated mechanism."

The applicant also canceled claims 8 and 10, and substituted two new claims, and his attorneys said, by way of argument in urging said substituted claims:

"Claims 8 and 10 as rewritten, clearly define patentable novelty over the Poppendieck machine, as they require that the means which removes the sticks from the receptacle (and holds them while tablets are being assembled therewith) shall remove them directly instead of using any such complicated apparatus as that used in the Poppendieck machine."

From this argument, so made on behalf of applicant, it appears that he concedes that his stick insertion mechanism was an improvement on Poppendieck, and new specifically but not generally.

Claim 10 was rejected on Poppendieck, of record. Applicant canceled claim 10 and filed a substitute and seven additional claims, which finally became the claims of the patent in suit.

Plaintiff contends that claims 1, 2, and 4 were three of the broadest claims and were never substantially changed, but I am unable to agree with this contention; on the contrary, it is my opinion that the claims made by the applicant which were first rejected were broader claims covering generically means for molding the pieces of candy and means for inserting the sticks. When these claims were rejected on the prior art, the applicant canceled them and sought the allowance of claims limiting the molding means to rolls in combination with any stick insertion mechanism. These claims being likewise rejected on the prior art, the applicant also canceled them.

[2] The argument made before the Patent Office cannot control or restrict the plain language of a claim finally allowed (A. G. Spalding & Bros. v. John Wanamaker, 256 Fed. 530, 167 C. C. A. 602), but the applicant cannot claim broadly anything that was rejected by the Patent Office unless finally allowed in the same language (Van Epps v. United Box Board & Paper Co. (C. C.) 137 Fed. 418), and, if the patent bears on its face a particular construction, the argument made before the Patent Office may confirm that construction (Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 227, 26 L. Ed. 149).

In my opinion the applicant has limited his claims, so far as molding means are concerned, to rolls, and, so far as stick insertion mechanism is concerned, he has limited himself to a mechanism including a roll having a long longitudinal groove for removing the sticks and keeping them separated.

[3] Having so limited his claims, the applicant cannot now contend for the broad construction that might have been had under any claims that were rejected (Hubbell v. United States, 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95; Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073), and the interpretation to be given to the means for delivering the sticks one by one into said grooves, and means adapted to thrust sticks into the material in claims 1, 2, and 4 of the patent in suit, must be a mechanism which includes a roll having a long longitudinal groove for removing the sticks and keeping them separate. As thus limited claims 1, 2, 4, and 12 of the patent in suit are valid.

The claims of the patent in suit on which this suit is based having been held valid, as I have construed and limited the same, the question next presented is that of infringement.

[4] As hereinbefore stated, the plaintiff contends that its invention was a pioneer invention and as such entitled to a wide range of equivalents, but I cannot agree with plaintiff; on the contrary, I am of the opinion that the plaintiff's patent is not for a pioneer invention, but is a patent for an improvement on the prior art, and that its range of equivalents is limited to the extent necessary to protect the actual invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

[5] The patent in suit does not perform a function that was never performed by any earlier invention, and therefore is not a pioneer invention. Morley Machine Co. v. Lancaster, 129 U. S. 273, 9 Sup. Ct. 299, 32 L. Ed. 715; Celluloid Mfg. Co. v. Arlington Mfg. Co. (C. C.) 44 Fed. 86; Norton v. Jensen, 49 Fed. 862, 1 C. C. A. 452;

National Cash Register Co. v. American Cash Register Co., 53 Fed. 372, 3 C. C. A. 559; Boston Lasting Mach. Co. v. Woodward (C. C.) 53 Fed. 481.

The invention of the patent in suit performs a function previously performed by an earlier invention, but performs that function in a substantially different way from any that preceded it, and is therefore a secondary patent. Butz Thermo-Electric Co. v. Electric Co. (C. C.) 36 Fed. 192; Writing Mach. Co. v. Book Typewriter Co., 108 Fed. 629, 47 C. C. A. 536.

[6] Claims 1, 2, and 4 of the patent in suit are combination claims, and they are not infringed unless all of the elements of the combination are present in defendant's machine. Shepard et al. v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376, 30 L. Ed. 492; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Black Diamond Coal Mining Co. v. Excelsior Coal Co., 156 U. S. 611, 15 Sup. Ct. 482, 39 L. Ed. 553.

In claims 1 and 2, as originally written, the inventor sought to procure a claim for grooves opposite the mold cavities, without regard to whether these grooves were in the same roll having the cavities, but this the applicant changed by amendment to read "one of said rolls being provided with mold cavities and a groove for each of said mold cavities." The groove was thus made part and parcel of the molding roll.

The molding rolls provided with mold cavities and a groove for each of said mold cavities, and means for delivering sticks one by one into said grooves, are essential elements of the combinations set forth in claims 1 and 2. These elements are not found in defendant's machine, and therefore these claims are not infringed.

The elements last above set forth are included as essential elements in the combination set forth in claim 4, and in addition thereto there is included in this claim gears connected to said rolls whereby they are caused to move synchronously. There are no such rolls and no such gears in the defendant's machine, nor rolls moved synchronously by such gears, and therefore claim 4 is not infringed.

Claim 12 was not an original claim, but was added by amendment and was rejected, and, as we have hereinbefore shown, it was allowed on the argument of the applicant's attorneys, part of which appears in the file wrapper in the following words:

"This specific form of roll is new and applicant is clearly entitled to a claim thereto, the claim should be allowed not only because of the protection which it affords him, but because of the novelty defined by the claim itself."

The applicant thus claimed as the novel feature of claim 12, and as differentiating it from the prior art cited, the roll (*25*) of his patent, having spaced mold cavities and longitudinal grooves one opposite each cavity. There is no such roll in the defendant's machine, and therefore claim 12 is not infringed.

The elements of the defendant's machine are: Feeding means for candy mass (rolls *26* throat *25*); cutting means (blades *28*, *29* and

knocker *35*) ; a dial or platen in the form of a turntable (*55*) with mold cavities (*56*) ; die means operating vertically in said mold cavities (*59, 63*) ; rotating mechanism for the platen which at definitely termed intervals disposes a mold cavity beneath the vertical die; die reciprocating mechanism; stick inserting mechanism (hopper *71* stationary groove *74*) ; channel (*58*); timed plunger (*59*); ejecting means (die *90* stem *91* and cam face *93*).

Plaintiff bases its claim of infringement on the doctrine of equivalents, but I cannot agree with plaintiff, because in my opinion defendant's machine is not only different in form from plaintiff's but its mode of operation is different, and its elements do not perform the same functions as the elements of the patent in suit, of which they are alleged to be equivalents; and the inventor of defendant's machine has introduced new ideas and new functions into the combination, and therefore we do not have the substitution of an equivalent. Dey Time Register Co. v. Syracuse Time Recorder Co. (C. C.) 152 Fed. 440.

The claim of the plaintiff as to equivalents could only be sustained by giving the present claims of the patent in suit a construction which would confer upon the patentee the benefit of the claims which were canceled, and this cannot be done. American Laundry Machinery Co. v. U. S. Hoffman Co. (C. C. A.) 271 Fed. 856; Condit Electrical Co. v. Westinghouse Co., 200 Fed. 144, 118 C. C. A. 474.

Each lollypop is made complete in one separate molding operation in defendant's machine, while in plaintiff's machine they are molded continuously between two coacting rolls. Plaintiff's pops are connected by a fin or web which must be broken. Defendant's have a smooth edge.

The defendant's machine can make pops of any desired thickness, but this could not be done with the plaintiff's machine without additional mechanism, as it would be impossible to deliver the molded candy if the impression in each roll was cut too deep.

Notwithstanding the fact that the dial in the defendant's machine is stationary at the moment the stick is being inserted, the die still presses down and the molding operation continues. In plaintiff's machine the molding ceases at the time the stick is inserted, because the rolls do the molding and also function in the stick insertion, because of the longitudinal grooves in one of the rolls, and the candy mass shrinks because it is fed in hot.

There is but one long stationary groove beneath the hopper in the defendant's machine, and by reason of the stop mechanism but one stick is delivered from the hopper at a time. In plaintiff's machine there are a number of the grooves on the rolls which remove the sticks from the hopper and carries them during its rotation so that there are a number of sticks spaced from each other on the roll while the molding operation is going on.

The molding operation is performed in the defendant's machine by a vertical die acting as a plunger and not by rolls, and said die has no grooves for carrying sticks but in the plaintiff's machine the grooves are in the molding roll.

In the defendant's machine the stick is inserted when the turntable (*55*), is absolutely at rest, and the channels (*58*) never carry a stick; therefore the channels do not function in the same way and for the same purpose as the grooves in the molding roll in plaintiff's machine.

In the defendant's machine each pop is formed separately and ejected from the molds mechanically; in plaintiff's machine the pops are delivered in a continuous chain at the exit end of the rolls.

In my opinion it thus appears that the operation of the defendant's machine is different from the operation of plaintiff's machine, the construction is different, and the pop produced is different.

No attempt seems to have been made in the defendant's machine to copy plaintiff's machine, but on the contrary the defendant's machine more nearly appears like the prior art than it does like the plaintiff's machine.

The claim that the pop produced by the defendant's machine is better than that produced by the plaintiff's machine would not of itself be sufficient to relieve from infringement, as that might be due to some improvement of the machine which alone would be patentable, but when it appears, as it does in the instant case, that a different result is obtained by the defendant's machine, operated in an entirely different mode from that of the plaintiff, and its elements do not perform the same functions as the corresponding elements of the patent of which they are alleged to be equivalents, the defendant is relieved from infringement. American Can Co. v. Hickmott Co. (C. C.) 137 Fed. 86; Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100.

[7] In my opinion defendant's machine represents a distinct advance in the art, was produced in good faith to meet the existing need, and does not infringe the claims of the patent in suit on which this action is based.

A decree may be entered dismissing the plaintiff's complaint, with costs.