## HAM BOILER CORPORATION v. HUGO et al.

Circuit Court of Appeals, Second Circuit. December 19, 1927.

No. 63.

1. Patents ⬤⟶328—1,272,883, claim 1, for arrangement of ham boiler parts, held not infringed.

Adelmann patent, No. 1,272,883, claim 1, for certain arrangement and combination of parts of ham boiler, *held* not infringed.

2. Patents ⬤⟶328—1,497,885, claims 1 and 3, for arrangement of ham boiler parts, held not infringed.

Adelmann patent, No. 1,497,885, claims 1 and 3, for certain arrangement of parts of ham boiler, *held* not infringed.

3. Patents ⬤⟶167(1¼)—Where disclosure of specification presents only trivial variation over prior art, patentee should be literally confined to detail he presents.

Where disclosure of specification presents nothing but a trivial variation in detail over prior art, patentee should be literally confined to detail which he presents.

4. Patents ⬤⟶168(2¼)—Patentee's action in withdrawing claim and substituting other words prevents him from contending for interpretation based on language of original claim in infringement suit.

Action of patentee of arrangement of ham boiler parts in withdrawing claim, embracing in general "an outwardly projected flange," and substituting for that element the words "portions of the flange being deflected downward, forming engagement lips," prevents him from contending in infringement suit for interpretation based on language of original claim.

Appeal from the District Court of the United States for the Southern District of New York.

Action by the Ham Boiler Corporation against Herman Hugo and another. From a decree holding that Adelmann patent, No. 1,272,883, claim 1, and Adelmann patent, No. 1,497,885, claims 1 and 3, were valid and

infringed by defendants, defendants appeal. Reversed.

Norman H. Gerlach, of Chicago, Ill. (Fritz Ziegler, Jr., of New York City, and Melville; Church, of Washington, D. C., of counsel), for appellants.

Wylie C. Margeson and William D. Sporborg, both of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The patents in suit relate to inventions in meat, and especially in ham boilers, in which there had long been a substantial development, which had progressed from a press with open ends, in which the juices were lost, to closed receptacles. Earlier patents show a metal box to hold the ham, a telescopic cover, a crossbar over the cover, adjustable and detachable locking devices between the bar and the box, and a cover resiliently held against the ham so that it may rise and fall as the ham contracts and expands in cooking. To produce a ham that is solid, and not stringy, pressure is required. The boiling swells it, and as it cools it shrinks. To keep it under pressure, and preserve its shape to the fullest extent before removal from the receptacle, the cover must not only be under pressure, but must follow responsively the movement of the ham as it rises and recedes.

In boiling hundreds of hams in a large establishment, the convenient adjustment of the receptacle, the bar, and the cover is manifestly important, and each patent states that the "invention consists in the arrangement and combination of parts."

[1] The only claim relied on in the first patent is claim 1, which reads as follows:

"1. In a ham boiler, the combination of a body receptacle having formed as an integral part of each end a vertical series of rack teeth which project outward and downward, a cover for the receptacle telescoping therewith, a bar having ends projecting over and beyond the vertical planes of the racks aforesaid, members pivoted to the ends of the bar and having hooked co-operation with the rack teeth to hold the bar in fixed adjusted position with respect to the body, and resilient means interposed between the cover and the bar."

It is quite clear that in this case the field of invention is very narrow. This is recognized by the specification itself, which not only says that the "invention consists in the arrangement and combination of parts," but refers to Adelmann's earlier patents. The only differences between patent No. 1,272,883 and Adelmann's patent No. 1,206,494, referred to, are that there were in the earlier patent:

(1) No vertical series of rack teeth integral with the ends of the receptacle body and hooks pivoted to the bar; but, instead, pivoted teeth designed to engage with a series of openings in dogs pivoted to the crossbar.

(2) Instead of a rigid crossbar connected with the cover by bolts and coil springs around the bolts to press the cover, so as to put the ham under pressure, a flexible bar fixed to the cover by bolts which will act resiliently to press the cover downward on the ham.

(3) Instead of having the ends of the bar projected beyond the verticle planes of the racks, so that the dogs are hung to swing by gravity away from the rack teeth, dogs which are pivoted to the ends of the bar, but not beyond the plane of the lugs on the receptacle ends.

It is difficult to see why the operation of the devices called for by these two patents is not the same in result. The difference in details of construction may give the patent in suit certain advantages of convenience, though boilers made under the earlier patent are still on the market in substantial numbers. They have dogs pivoted to a flexible spring bar and adjusted by wing nuts engaging lugs fixed to the box, instead of dogs pivoted to a rigid bar and engaging with rack teeth on the ends of the box. In the earlier patent the flexible bar is the resilient means which responds to the action of the ham under pressure, while in the patent in suit the coiled springs serve this purpose. To be sure, the flexible bar, while a resilient means adapted to the above purpose, is not in the language of claim 1, a "resilient means interposed between the cover and the bar"; for the bar, being flexible, required no such resilient means, but the coil springs around the bolts in the patent in suit were a "resilient means" so interposed, readily suggested by such prior art as the patents to Briggs, No. 1,079,160, and Butz, No. 1,165,223, and the French patents, No. 449,376 to Pavard and No. 510,709 to Chaignet.

The French patent to Le Bourhis, No. 465,708, narrows the field of invention in these ham boilers so much further as to leave little to the inventor beyond his precise structure. The Le Bourhis patent discloses a receptacle with a series of lugs or rack teeth integral with each end. Into them are hooked stirrups or steps at the lower ends of coil springs, at the upper ends of which are sim-

ilar stirrups, fastened to lugs on the box cover or counterplate. The function of the springs consists in moving the counterplate toward the bottom of the box, and consequently compressing as strongly as may be desired the substances placed therein.

Furthermore, the Patent Office referred to the patents to Butz and Briggs, and the French patents to Le Bourhis and Pavard, and rejected all the claims of this patent in the beginning. The first claim was then amended, so as to read that the vertical series of rack teeth formed *an integral part of each end of the receptacle*, and that the ends of the bar projected "beyond the vertical planes of the racks." This was accompanied by a cancellation of original claim 2, which provided generically for "rack and pawl means acting between the ends of the receptacle and the ends of the crossbar to adjustably interlock the crossbar with respect to the receptacle."

Now, defendants' device consists of a box, a telescopic cover, dogs each with a series of rack teeth adapted to engage a continuous flange forming the lip of the receptacle, links between the upper ends of the dogs, lugs fixed to the cover, and springs coiled around the pivots between the inner ends of the links and the lugs, exerting a resilient pressure against the contents of the receptacle. The link construction makes it possible for the cover to be further tilted, and to adapt itself more exactly to the shape of the ham than in the patent in suit, where the cover is substantially limited by the slidable bolts to a rectilinear movement.

The defendants' device has no rack teeth integral with the body of the receptacle, and also no bar having ends projecting beyond the planes of the racks. Not only was the amendment to the claim inserted to call for a specific structure of rack teeth integral with the box ends, in order to avoid rejection by the Patent Office, but defendants followed the patent to Rispel, No. 1,208,013, and used toothed racks to engage a flange. Moreover, the very reason for inserting by amendment the provision about having the ends of the bar projecting beyond the plane of the racks was to secure the advantage of having the dogs, when released, swing by gravity away from the teeth. (Specification, patent in suit, line 55). The dogs in defendants' device are not hung so that they would so swing.

But more decisive than all this is the indubitable fact that, even if defendants' links, in spite of the history of the art and of the action in the Patent Office, were regarded as the patentable equivalent of a crossbar, yet the "members pivoted to the ends of the bar and having hooked co-operation with the rack teeth" would not and could not hold such "bar in fixed adjusted position with respect to the body" of the receptacle as called for by the claim. The bar shown in the specification of the patent in suit is rigid, and is in a fixed position as soon as the dogs engage with the rack teeth. The whole framework is then solid and fixed in every sense. The only movement is in the cover and its bolts slidably adjusted to the bar. The coil springs around the bolts then allow the cover a substantially rectilinear movement up or down, as the relative pressures of the springs and of the substance that is being cooked may cause the bolts to rise or fall through the slots in the bar.

On the other hand, in defendants' structure the links move up and down with the cover like the resilient bar of Adelmann's patent, No. 1,206,494, which responds to the expansion and contraction of the substance cooked. Nor are defendants' resilient means "interposed between the cover and the bar," in the sense called for by the claim in suit. A movable cover and a fixed bar is there required. But the defendants substitute coil springs in the links for the spring bar of the earlier patent. The resilient links cannot at the same time be the equivalent of the bar and the interposed resilient means of the claim. The limitation of the claim to a "series of rack teeth integral with the receptacle ends," to a bar held "in fixed adjusted position," and to bar ends projecting "beyond the vertical planes of the racks," was made to escape rejection in the Patent Office and to secure the patent. Such action, especially in view of the narrow field of invention, requires the severest limitation of the claim to the details indicated. But this is more than a mere technical argument. Swinging links, teeth on the dogs, and dogs not released by gravity, were no part of the invention sought to be covered by claim 1. Defendants have followed other prior art. In Rispel, No. 1,208,013, the rack teeth are shown engaging with a flange, instead of integral with the end of the box. A locking device more like defendants' than that of the patent in suit is also shown in Figures 3 and 4 of the Adelmann patent, No. 1,206,494, and in the patent to Le Bourhis there is, as in defendants' boiler, no crossbar, but lugs on the ends of the cover plate from which the coiled springs are hung, furnishing resilient means responsive to the action of the meats that are being cooked. But these resilient means, like those of defendants', are not interposed between the cover and a bar. Not only are these things

so, but the patent to Le Bourhis foreshadowed the tiltable cover which defendants' device has, and by means whereof defendants seem to justly claim a closer fitting of the cover to the food product that is cooked. Le Bourhis in his specification (record, folio 711) said:

"The apparatus is essentially constituted by a metal box without a lid and with vertical sides with an independent counterplate, which can be pushed in freely so that it is able to rock in either direction."

With proper limitations, we can see no infringement of claim 1 in the defendants' device.

[2] *Patent No. 1,497,885.*—The claims relied on in this patent are 1 and 3, which are as follows:

"1. The combination of a receptacle having an outwardly formed stiffening flange at its upper portion, portions of the flange being deflected downward forming engagement lips, a cover for the receptacle, and members carried by the cover and co-operating with the lips for holding the cover in fixed relation to the receptacle."

"3. The combination with a receptacle whose upper portion is outwardly flanged and portions of the flange being bent downward forming lips, of a cover for the receptacle, a bar connected to the cover and extending beyond the ends thereof, and a pair of racks pivoted to the ends of the bar and co-operating with said lips of the receptacle respectively."

The invention claimed in this case is for meat cookers or ham boilers, and the specification, like that in the former patent, relates to details in the arrangement and combination of the parts.

Claim 1 is in terms very broad, so much so that, except for the clause, "portions of the flange being deflected downward forming engagement lips," the claim would, on its face, be invalid, in view of patent No. 508,-759 to Reubold, and French patent No. 449,-376 to Pavard. Each of these patents discloses a device for cooking meats having a receptacle with an outwardly formed stiffening flange at its upper portion, which is deflected downward, and members carried by the cover and co-operating with the flange for holding the cover in a fixed relation to the receptacle. Reubold particularly shows a similar mode of engagement to that of defendants.

[3] The difference between claim 1 as it reads and these patents lies in the words "portions * * * forming engagement lips." As to this, plaintiff says that there should be some margin for variation in the precise invention

disclosed, and that by the doctrine of equivalents the defendants' flange, having a perimeter regular and continuous in diameter, answers the same purpose as the lips. Perhaps it does; but, where the disclosure of the specification, so far as applicable to this claim, presents nothing but a trivial variation in detail over the prior art, we think the patentee should be literally confined to the detail which he presents.

In the Patent Office claim 3 was for a combination in a cooker "of a receptacle whose upper edge is formed with an outwardly projected flange and a cover telescopically movable within the receptacle, of fastening means between the receptacle and the cover including rack members co-operating with portions of said flange." This claim 3, with all the other claims originally filed, was rejected in Adelmann's patent, No. 1,449,850. Claim 4 was allowed to stand, being renumbered as claim 3, and claim 1 seems to have practically supplanted the canceled claim.

[4] The action of the patentee in withdrawing a claim, embracing in general "an outwardly projected flange" and substituting for that element the words "portions of the flange being deflected downward forming engagement lips," by a well-known rule prevents him from now contending for an interpretation based upon the language of his original claim. Hubbell v. United States, 179 U. S. at page 80, 21 S. Ct. 24, 45 L. Ed. 95; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429 at page 444, 47 S. Ct. 136, 71 L. Ed. 335.

Claim 3 also contains the limitation, "portions of the flange being bent downward forming lips," which has been discussed in respect to claim 1. Lips in a flange "projecting outward in a horizontal plane" are described in the specification illustrated in the drawings, and are the only means of engagement with the members carried by the cover which are shown in this patent. While claim 3 was never amended in the Patent Office, its language in describing the lip should be limited in the same way as that in claim 1. The defendants' flange must be regarded as having no lip, or as being all and not a portion thereof a lip. Yet both claims call for portions of the flange bent downward "forming * * * lips," and the specification says: "The open top being surrounded with a flange * * * projecting outward in a horizontal plane, except at the centers of the ends, where they are bent, forming engagement lips *12*" (page 1, lines 55–59).

In view of the history in the Patent Office and the very narrow field for invention, we hold that the lip must be a portion of the

flange, and not the whole of it. With such an interpretation, defendants' structure infringes neither claim.

The decree is accordingly reversed as to the claims in issue in both patents.