**HESPE v. CORNING GLASS WORKS, Inc., et al.**

District Court, W. D. New York. December 31, 1929.

Briesen & Schrenk, of New York City (Hans V. Briesen, of New York City, of counsel), for plaintiff.

Barton A. Bean, Jr., of Buffalo, N. Y., and Vernon M. Dorsey, of Washington, D. C., for defendant Corning Glass Works, Inc.

Edward H. Cumpston, of Rochester, N. Y., Cooper, Kerr & Dunham, of New York City and Alfred Burger, of Rochester, N. Y. (Drury W. Cooper and Allan C. Bakewell, both of New York City, of counsel), for defendant Taylor Instrument Companies.

HAZEL, District Judge. The two patents in suit were granted November 17, 1925, No. 1,561,925 (app. filed January 10, 1922), and No. 1,561,926 (app. filed January 6, 1925), respectively, both relating to thermometer tubing as an article of manufacture. The defendant Taylor Companies deals in thermometers of the type alleged to infringe plaintiff's two patents, while the Corning Glass Works, Inc., is the manufacturer thereof. In the specification of the first patent, the patentee substantially declares that in the use of thermometers to indicate temperature, it has ever been difficult to accurately and rapidly determine the results of their varied uses in industries and in clinics; and, in prior art thermometers, it was always troublesome to rightly discover at a glance at the lens the precise location of the upper end of the mercury column. Close scrutiny and examination of the lens was necessary before the resultant indications could be ascertained, owing to the brilliancy of the glass tubes and the luster of the mercury surface contained therein, producing light reflection and making it difficult to read the mercury in its channel. Moreover, it was not easy to discern the mercury column, since its diameter was extremely small in comparison with the oval or rounded contour portions of the glass tube. To eliminate these hindrances, the patentee conceived the idea of vividly coloring the tubular space or perforation wherein the mercury contracts and expands. He designed to utilize the entire length of the bore in the tube by molding a colored strip of glass into the wall, as shown in Figs. 14—3 to 6 of the patent drawings. The colored part, red, pink, or yellow, contrasted with the appearance of the magnified mercury and practically became a part of the back wall of the tube's bore, separating it from an intervening light shield (Fig. 14), without any portion appearing at either side of the mercury column. By his preferred adaptation, the colored part is blotted out by the rise of the mercury and reappears upon its fall. Plaintiff claims, and the evidence supports the claim, that by his invention he conceived a patentable departure from prior art patents wherein the mercury rises in a field of colored glass, or where the colored part is wider than the width of the mercury; and that by his improvement, the top and length of the mercury column is quickly discovered for reading.

The defenses, as to both patents, are invalidity, limitation of claims, prior use of the second patent, and noninfringement.

The proofs show that thermometers with a white background or stem for industrial and clinical uses were very old. It was also old to place in the glass back-tubing of a thermometer, a light shield spaced between the walls of the perforation or bore and the outer part of the tube or stem above the bulb. Indeed, capillary thermometers of this common type had been produced and sold in large quantities by defendant Taylor Instrument Companies long before the inventions in suit. Reference to the prior art discloses that the British Hicks & Salt patent, No. 4212, of 1888, described a clinical thermometer with a colored layer of ruby or other colored glass applied to an opaque, enameled, white shield positioned back of the wall·of the tubing and slightly away from the bore to make the ruby brighter and more distinct. The purpose of the inventors was similar to Hespe's, namely, to construct the thermometer in such a way as to facilitate readily reading the mercury on its appearance above the colored glass. In structures of this ruby type, however, the mercury rises entirely in the red or colored field without any change of color in the bore; and, as the front of the lens is visualized, the colored glass extends from one side to the other—the very thing the patentee regarded as an objection and sought to overcome by his invention. The bore of the mercury path, as it rises in these structures, is not of different color from the major part of the thermometer. In fact, none of the devices wherein the mercury rises in an expanse of red or contrasting color on the face of the instrument, or in which the contrasting tinge is wider than the path of the mercury are anticipatory, or based upon the principle of the Hespe patents in suit. Nor is the Gauge glass (Exhibit 16–M), covered by the Clark British patent No. 4960, describing a red stripe beyond the bore on an opaque background, of importance, since, in such a device, the stripe of red is widened by the entry of water in the tube.

Such arrangement would not be adaptable in a mercury thermometer, though its use is suggested; but the patent does not describe any method by which such a result may be obtained. Neither the Clark patent nor the Guilbert Martin patent for a like device is based on the principle of the patents in suit, and therefore is not anticipatory or of sufficient importance to warrant a limitation of the claims. The Jena type of clinical thermometer shows a color strip back of the bore, but, like the ruby type already mentioned, is wider than the bore, with the result that the mercury functions in a field of color.

Reliance is placed on the prior Frankenburg patent, No. 744,325, granted November 17, 1903, which is put forth as a complete disclosure of plaintiff's second patent, though it was also cited against the first patent in suit. Frankenburg's object was to facilitate accurate reading of thermometers, more particularly fever thermometers. To accomplish his purpose he introduced parallel streaks of different color in the glass tube, and arranged a red stripe on the inner side of an opaque layer B at a distance apart corresponding, he says, approximately to the width of the magnified mercury thread and leaving uncovered a central band of the opaque layer. The model in evidence (Defendant's Exhibit H) is claimed to follow the disclosure of the patents. It is apparent that Frankenburg by the introduction of colored streaks on a white background, or a yellow streak on a red background, desired to create a contrast to the visual color of the mercury in the column, so that its top end might be speedily determined. I am not convinced of the complete similarity of construction and appearance of plaintiff's and Frankenburg's thermometers. The conception of the patentee was to avoid features of construction, shown by Frankenburg, which deterred or tended to deter easy reading. So far as the record shows, Frankenburg's patent, though granted fully 25 years before the involved patents, failed to attract any attention after its grant. It evidently did not successfully accomplish the intended purpose. It did not result in facilitating the reading of the thermometer more readily or comfortably. That the red or other colored band extended to the sides of the bore is readily discerned upon scanning Fig. 2 of the drawing. It is true that, as the mercury rises, its upper part shows a colored streak, but the colored part was not confined to the bore; the mercury, in rising and falling, having, as already stated, color on both longitudinal sides of the column. Defendant's Exhibit H discloses a comparatively small portion of red

lengthwise of the mercury, while the drawings indicate a wider band which persuasively indicates that Frankenburg's error consisted of having a width of red back of the bore corresponding to the width of the bore, resulting in a fairly conspicuous field of red which impaired rapid reading. The exhibit represents an elliptical bore instead of a round bore, as shown in the patent, which, it is thought, allowed a narrower strip than the width of the bore, and did not produce the effect of the Hespe patents.

It is contended by defendant that the claims in issue must be limited to a colored member physically formed as a portion of the wall of the bore of the tubing; and in support thereof reference is made to Figs. 5, 6, 7, and 9 of the drawing and specification. Also the inference is drawn that, since the colored member does not form the wall of the bore, but is spaced therefrom by intervening glass, it was Hespe's intention that the colored member should overlap at the sides of the mercury. The rear wall, however, has color imparted to it by the colored glass member, and the novel effect to the eye may be had either from placing the colored member near the wall of the bore as stated in Fig. 9, or setting it back somewhat, as stated in Fig 6. Such an interpretation, in view of the substantial advance made, is believed compatible with the wording of the claim. Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

By the file wrapper, which is rather confusing, it appears that the original applications embodied various claims which were rejected by the Patent Examiner as being too broad—a rejection apparently acquiesced in by the patentee—though plaintiff claims they were voluntarily withdrawn. However, new claims were submitted and the two in issue finally allowed. I have concluded that the advance made over the old type of thermometers, together with the commercial appreciation accorded the improvement, as the evidence shows, especially as applied to industrial uses of the thermometer, negatives the claim of defendants that the primary patent is invalid and should be narrowly construed, or is devoid of utility. Certainly the inventor's struggle in the Patent Office, on filing his application, for broader claims and their apparent rejection, does not, in this instance, call for a narrow construction of those retained, since they fairly embody the essential elements of a discovery first conceived by the patentee, viz., the obliteration of the colored member in the bore when the mercury rises. Defendant's contention that the claims must

be interpreted as precisely locating the red member near the walls of the bore without any fractional departure would, I think, be a strained limitation. They must be interpreted in the light of those that were rejected together with the prior state of the art (Hubbell v. U. S., 179 U. S. 77, 21 S. Ct. 24, 45 L. Ed. 95), and, upon doing so, I am persuaded that patent No. 1,561,925 is entitled to a fair range of equivalents to afford protection to the inventor from infringement. The claims of the first patent read as follows:

"1. A thermometer comprising a glass tube having a longitudinally arranged drawn glass colored member forming a portion of the wall of the bore at the back side only thereof and adapted to be covered by the fluid rising in the bore, when viewed through the front."

"2. A thermometer comprising a lens front glass tube, a colored glass member forming one wall of the bore thereof and so arranged that the fluid in rising will obliterate the colored member from view through the lens front of said tube."

In the second patent, the patentee provides a colored member in the glass of the tube between the tube bore and light shield or backing member, consisting of a colored strip (contrasting color), arranging it separately therefrom by intervening transparent glass in such a way as to show a line of color substantially equal in width to the apparent width of the mercury in the bore or perforation.

Claims 1 and 2 read as follows:

"1. A thermometer tube having a light shield and a colored member arranged between the tube bore and said light shield and separated from both said bore and said light shield by intervening transparent glass."

"2. A thermometer tube having a light shield and a colored member arranged between the tube bore and said light shield and separated from both said bore and said light shield by intervening transparent glass, said colored member being of a visual width substantially equal to the width of said bore."

The first patent makes no reference to a light shield, the visual effect being produced regardless of its use; while the second, as pointed out, includes the use of light shields in connection with the colored glass strip, spaced a very small distance from the bore, together with the resulting effects. Although the use of opaque light shields to prevent rays of light from interfering with readily reading the thermometer was old in the art, the patentee, by his new combination and arrangement of parts specified in the second patent, secures a better visibility of the mercury column by estopping interference from light rays. As bearing upon the effect of the arrangement of parts, the specification says:

"The important consideration is that the visual width of the colored member, such as 20, should approximate the visual width of the bore and it will, therefore, be understood that if the colored member is moved backward from the bore or nearer the light shield, the width of the colored member should be reduced, so that it will not extend materially, out of the visual field of the lens, when observing the bore, that is, the colored member will be, as near as possible, wholly within the observation range of the lens and will appear of substantially no greater width than the bore."

There is testimony tending to show that the witness Norwood, technical director of defendant Taylor Companies, upon learning that a tubing had been constructed by plaintiff with a bore having red color of the seeming width of the mercury perforation, went to defendant Corning Glass Works, and, aided by experienced employees, who had aided Hespe in his constructions, made a glass thermometer tube similar to plaintiff's and producing the same visual effect, viz., tubing 16–G in evidence, admittedly corresponding to the description of the second patent in suit. Additional tubing was furnished by the Taylor Companies in 1923 and 1924 to its customers; and the Corning Glass Works manufactured and sold tubing similar to plaintiff's under the second patent, to various persons and firms. Later an agreement was entered into with plaintiff that it would not manufacture for other unlicensed persons or firms. Defendant Taylor Companies, however, is unlicensed, and the Corning Glass Works continues to make thermometers of the Hespe type; it having obtained an indemnity bond from the Taylor Companies saving it harmless from liability for asserted infringements. It is shown that Taylor Companies started to make the tubing under the second patent in 1922, continuing to 1925, and that it was aware of the pending applications for patents. Indeed, Norwood in 1925 applied for a patent covering a thermometer wherein the bore in the tubing was made of red glass and red color surrounded the bore, which came in interference with plaintiff's and Culver's applications for the process of making thermometer tubes, and which terminated in favor of Hespe but are not herein involved.

The bill avers that Hespe's second application was a specific development of the first

or basic invention, and the evidence supports the averment. The file wrapper in the letter of the Examiner, dated May 8, 1925, indicates that he regarded the application as a continuation in part of the application Ser. No. 528,327 (the first patent) and Ser. No. 683,406 (process patent not involved). In such case, where there are no intervening rights, an application relating to the same subject-matter as contained in the first patent is ordinarily, as I understand the rule, entitled to the same date of application as the patent first granted. Wagenhorst v. Hydraulic Steel Co. (C. C. A.) 27 F.(2d) 27. The first and second patents are so closely interrelated that I think the principle that each invention or element contributing to the successful end of the entire combination must be considered applies. Consolidated Window Glass Co. v. Window Glass Machine Co. (C. C. A.) 261 F. 369.

The evidence shows that, as far as the visible effects are concerned, there is no difference between plaintiff's and defendant's thermometers. The original conception, as embodied in the first patent, was to produce a thermometer wherein the rear wall of the bore showed up in contrasting color without its color appearing laterally of the bore. Forming the bore at the back side only, as stated in claim one, to create the optical effect, does not strictly demand the physical location. The red strip, to function as designed, must be placed in the wall near the bore to attain the result. Defendant's thermometer includes a glass colored member in juxtaposition to the rear wall so as to cause the bore to seem red or colored and to be covered by the mercury as it rises in the bore and exposed on its drop. Such a construction falls fairly within the scope of the claims, and defendant has not avoided infringement by placing the colored member back a little from the rear wall of the bore. The tubes Exhibits H and I impart the new and novel optical effect of plaintiff's patent and are therefore infringements. The second patent is also infringed by defendant's product, Exhibits 16-H and 16-I. Although in defendant's tube (Exhibit 16-I) the light shields are given a crescent form located laterally from the bore, they have the same purpose as plaintiff's. The red strip in the exhibit last mentioned is separated from the bore and light shield by intervening transparent glass. The additional white line in defendant's structure, to intensify the colored strip, does not avoid infringement, since it embodies the essential elements of the claims in suit. Stebler v. Riverside Ass'n (C. C. A.) 205 F. 735.

My conclusion is that both patents are valid and that defendant's thermometer tubing Exhibits 16-H and 16-I are infringements of the respective claims involved herein, and plaintiff accordingly may enter a decree against the defendants with costs.