## BARNETT v. F. W. WOOLWORTH CO.
### No. 5001.

District Court, E. D. New York.

May 26, 1931.

Albert T. Sharps, of New York City, for plaintiff.

Gifford, Scull & Burgess, of New York City (George F. Scull, of New York City, of counsel), for defendant.

INCH, District Judge.

This is a patent suit. The defendant is a corporation operating chain stores. The defense is presented by the manufacturer of the alleged infringing article, which manufacturer is a subsidiary of another manufacturing company, both having a common manufacturing plant.

Plaintiff's patent was applied for December 22, 1927. It was granted October 8, 1929, being United States No. 1,730,873 (Plaintiff's Exhibit 10).

The invention "relates to attachment fittings for electric circuits of the plug-in type for use in connection with portable appliances, lighting systems, storage battery charging circuits, radio sets and other like electric apparatus." (Lines 1 to 6.)

Among the several objects of the invention, and apparently the most important one, is that providing "in fittings of the character described improved means for guiding the detachable terminals of connecting circuit portions whereby the cooperating current carrying engageable parts are easily and simply brought into proper register or alignment for connecting said circuit portions." (Lines 18 to 25.)

In substance this means that Barnett claims to have invented a receiving plug so constructed as to expedite, better than ever before, the insertion of the blades of another plug.

Plaintiff is a patent attorney of many years' practical experience as an electrical engineer. He testified that he had, off and on for about two years, been working on this idea of an improved, what I may term, reception plug. He stated he had seen many plugs, among them being the so-called Cutler-Hammer plug (Plaintiff's Exhibit 6), but that nothing was found by him to accomplish what he wished to accomplish; that is, a reception plug which, when placed in a dark or awkard location, would furnish a simple and prompt guide to the person desiring to insert the prongs or blades of an attaching plug. That finally he devised his plug (Plaintiff's Exhibit 7). He applied for and received his patent thereon. A reference to Fig. 4 of the said patent drawing shows its construction.

The defendant is selling, and the manufacturers, above referred to, are making, the alleged infringing device (Plaintiff's Exhibit 2).

Defendant does not dispute these facts, but insists that there is no infringement shown even if Barnett discovered something that was patentable.

The issue therefore is primarily whether or not defendant's article infringes the claims and disclosures of plaintiff's patent.

Plaintiff relies on but two of the nine claims. These are claims 1 and 3 and are as follows:

"1. In an electric outlet fitting, a body having an opening adapted to receive a detachable current carrying terminal therein, said body having a transversely extending groove aligning with and substantially the width of said opening for guiding said terminal to register with the opening."

"3. A detachable electric connection comprising terminal blade members, terminal spring members for contacting with said blade members, a body for housing said spring members, said body having socket openings wherein said blade members are inserted for contacting with said spring members, and grooves aligning with and substantially the width of said openings for guiding the blades to enter the openings."

It will be seen therefore that in both these claims the alleged novel idea is "a transversely extending groove" and "grooves aligned with and substantially the width of said openings."

Unless these are found in the alleged infringing device there is no infringement and plaintiff is not entitled to an injunction, whatever his right of a monopoly given by his invention, as disclosed and claimed, may be.

Whether or not Barnett's invention is practical, so far as its use is concerned in the trade, I am unable to determine from the evidence. No proof appears that it has ever been on the market and defendant claims that it is a mere paper patent. These facts may have some significance. Westinghouse Electric & Mfg. Co. v. Toledo, P. C. & L. R. Co. (C. C. A.) 172 F. 371. But a patent will be protected even though the holder thereof has never put the patent into use. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122.

There is no requirement that an inventor should manufacture. National Malleable Castings Co. v. Buckeye Malleable Iron & Coupler Co. (C. C. A.) 171 F. 847.

There is some proof that, after his application was being considered in the patent office, his attention was called, by that office, to the prior art (McClatchie patent, No. 1,538,197), and that he amended his claims by the use of the words "substantially the width of said openings" (see file wrapper).

It is unnecessary, in my opinion, to go into the effect of this change on the theory that there may be an estoppel. R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 30 F.(2d) 271. Although the limitation was

plainly intentional. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800.

██ Nor, on the other hand, the well established doctrine that a claim, if broad enough, entitles an inventor to any method by which it can be used. West v. Premier Register Table Co. (C. C. A.) 27 F.(2d) 653; Steiger v. Waite Grass Carpet Co. (D. C.) 194 F. 878.

██ If an inventor has voluntarily restricted his invention, he of course cannot obtain a larger scope by a means of construction or subsequent appeal to the doctrine of equivalents. Shepard v. Carrigan, 116 U. S. 593–598, 6 S. Ct. 493, 29 L. Ed. 723; Hubbell v. U. S., 179 U. S. 80, 21 S. Ct. 24, 45 L. Ed. 95.

Nor is it necessary to spend time upon the effect, if any, of the co-pending applications of Tregoing, No. 1,677,256, and Ile, No. 1,585,350. Although they should be mentioned in passing. Milburn v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651.

It is not on these proper technicalities, however important they may be, that I prefer to base the decision of this suit.

██ The invention of Barnett plainly relates to "a transverse groove" extending to the edges of the plug, which groove is a continuation of the width of the opening in the plug, or "substantially the width" thereof. To "transverse" means "cut across," "crosswise."

Segments of a circle does not imply a "transverse" groove. The "recess" found on the face of a plug such as is shown in defendant's alleged infringing device (Plaintiff's Exhibit 2) is not a transverse groove within either the description or the spirit of the idea which Barnett discloses.

Indeed, counsel for plaintiff makes this statement: "Barnett employs a system of *parallel straight grooves in alignment with the recesses* and substantially the width of the recesses." (Plaintiff's Brief, p. 14.)

To extend the claim of plaintiff, so definitely expressed and as shown in his patent drawing, and demonstrated in the device (Plaintiff's Exhibit 7), so that a monopoly be granted him over all "recesses" on the face of a plug, would not only, it seems to me, be inconsistent with the prior art (Defendant's Exhibit C), but would grant him a right which he has not claimed.

On the contrary, it seems to me perfectly consistent to allow Barnett to enjoy the patent which he has obtained within its proper limitation and at the same time find, as I do, that there has been no infringement by defendant.

It seems obvious to me, on the question of "rotation" of the prongs or blades, by a person wishing to make a connection between the two plugs, that Barnett relies as much on this method as any other.

Barnett's invention is confined to *"transversely extending* grooves, aligning with and substantially the width of said opening," or, as his counsel states, "a system of parallel straight grooves in alignment with and substantially the width of the width of the recesses."

I decide that the defendant's device, with its "circular recesses," does not infringe.

Accordingly, there being no infringement, the complaint of plaintiff must be dismissed. I do not pass upon the validity of the patent.

Complaint dismissed, with costs.